20 S.W.3d 385 (2000)
In The Matter of the ADOPTION OF Tyler Davis TOMPKINS, a Minor.
Anthony and Elizabeth Johnson
v.
Melissa Joyce Tompkins.
No. 99-957.
Supreme Court of Arkansas.
July 7, 2000.
Baxter, Jensen, Payne & Young, by: Ray Baxter, Benton, and John Payne, for appellants.
Robert L. Herzfeld, Jr., Benton, for appellees.
ROBERT L. BROWN, Justice.
The appellants, Anthony and Elizabeth Johnson, are the paternal grandparents of Tyler Davis Johnson, who is the child of appellee Melissa Tompkins and appellants' deceased son, Jeffrey Johnson. Melissa Johnson, now Tompkins, and Jeffrey Johnson were divorced shortly after Tyler's birth, and Melissa Johnson retained custody of Tyler. She then married Kenneth Tompkins in 1992. On September 25, 1998, Jeffrey Johnson died, and on December 30, 1998, Kenneth Tompkins, with the consent of Melissa Tompkins, filed a petition to adopt Tyler in the Saline County Probate Court. On January 6, 1999, the Tompkinses sent notice to the Johnsons that the petition for adoption had been filed and that a hearing on the matter had been set. On January 20, 1999, the Johnsons filed a response to the adoption petition. They asserted that the adoption would not be in Tyler's best interest, and they asked the court to deny the petition. The Tompkinses then filed a motion to strike the response and contended that the Johnsons were not parties who were required to consent to the adoption under Ark.Code Ann. § 9-9-206 (Repl.1998). Thus, according to the response, the Johnsons were not entitled to file a responsive pleading.
*386 On April 20, 1999, the adoption hearing was held. At the hearing, the Johnsons maintained that they should be allowed to present evidence on whether the adoption would be in Tyler's best interest. The probate court found that while the applicable statute (Ark.Code Ann. § 9-9-212(g) (Repl.1998)), required notice to grandparents in adoption cases, it did not grant them an opportunity to be heard or to present evidence on the matter. On May 3, 1999, the trial court entered an order granting the adoption. In that same order, the probate court awarded visitation rights to the Johnsons.
The Johnsons urge in this appeal that they had a statutory right to be notified of the adoption and that, accordingly, due process affords them the additional right to be heard in the proceeding on whether the adoption is in the best interest of the child. They point specifically to § 9-9-212(g), the notice statute, but they also rely on this court's decision in Quarles v. French, 272 Ark. 51, 611 S.W.2d 757 (1981). The Quarles decision, they contend, supports their position that they should have been afforded an opportunity to present evidence on the merits of the adoption. The Tompkinses counter that § 9-9-212(g) affords grandparents the opportunity to request visitation rights but not the authority to contest the adoption on the merits as an intervening party.
Section 9-9-212(g) provides:
When one (1) parent of a child or children is deceased, and the parent-child relationship has not been eliminated at the time of death, and adoption proceedings are instituted subsequent to such decease, the parents of the deceased parent shall be notified under the procedures prescribed in this subchapter of such adoption proceedings.
This court has consistently held that adoption statutes are to be strictly construed and applied. See, e.g., Dougan v. Gray, 318 Ark. 6, 884 S.W.2d 239 (1994); Swaffar v. Swaffar, 309 Ark. 73, 827 S.W.2d 140 (1992). Moreover, in Cox v. Stayton, 273 Ark. 298, 619 S.W.2d 617 (1981), this court said: "any rights existing in grandparents must be derived from statutes...." Id. at 304, 619 S.W.2d at 620.
It is clear that under § 9-9-912(g), the Johnsons had a right to notice of the adoption proceedings. And they received the required notice. But the statute does not grant to grandparents a right to intervene or a right to be heard in adoption proceedings. Under a strict construction analysis, we have no doubt that had the General Assembly intended to include a right to be heard by notified grandparents, it could easily have done so. Indeed, the General Assembly has specifically granted an opportunity to be heard together with the right to notice in other contexts. See, e.g., Ark.Code Ann. §§ 9-9-220 (Supp. 1999) (relinquishment and termination of parent and child relationship); 9-9-224 (Supp.1999) (child born to unmarried mother); 9-17-401 (Repl.1998) (petition to establish support order).
The Johnsons are correct that in Quarles v. French, supra, this court held that under the facts of that case, the grandparents could be heard. But the facts in that case were different. In Quarles, we addressed the issue of whether the appellants, who were grandparents, had standing to intervene in the adoption proceedings for their grandchildren, who were children of their deceased child. The appellants' son had died after he and his wife, the appellee, had divorced. The appellants were awarded full custody of their grandchildren for a period of approximately nine months under an order of the chancery court. Custody was later returned to the mother, but the grandparents were given weekend visitation rights. Later, the mother remarried and her husband sought to adopt the children. The grandparents were given statutory notice of the proceedings, and they moved to intervene. The probate court denied the motion and entered a final decree of adoption.
*387 In reversing that decision, this court said that the question to be resolved is "do the visitation rights previously granted them by the chancery court confer a sufficient interest in the adoption proceeding that appellants have standing to intervene?" Quarles, 272 Ark. at 53, 611 S.W.2d at 758. We then noted that in at least two previous decisions, we had held that grandparents standing in loco parentis had a sufficient interest in the adoption of natural grandchildren to entitle them to intervene in an adoption proceeding. Id. (Citing Cotten v. Hamblin, 234 Ark. 109, 350 S.W.2d 612 (1961); Nelson v. Shelly, 268 Ark. 760, 600 S.W.2d 411 (Ark.App. 1980)). This court also found it important that the grandparents were parties to the earlier custody proceeding and had specific visitation rights granted to them by the chancery court. We noted that the decree of adoption would extinguish those rights without an opportunity to be heard. We then concluded:
This decision is restricted to the narrow principle that grandparents who have been granted visitation pursuant to Ark. Stat. Ann. § 57-135 have a sufficient interest in adoption proceedings to intervene for the limited purpose of offering such evidence as may be relevant to the focal issue, i.e., whether the proposed adoption is in the best interest of the children.
Id. at 54, 611 S.W.2d at 759.
We followed this same approach in Cox v. Stayton, supra. The Cox case involved adoption proceedings for three children. The children had been taken from the custody of their parents and were temporarily placed in the custody of their grandparents, who were the appellants in the case. The children were later placed with foster parents. When the foster parents sought to adopt the children, the grandparents attempted to intervene to show that the adoption would not be in the best interest of the children. The trial court allowed the intervention but granted the adoption of each of the children. On appeal, the grandparents argued that the adoption statutes were unconstitutional because they deprived grandparents of their rights to the grandchildren without due process of law. This court found no merit to this argument and said:
The appellants' argument fails to identify a foundation or basis for the alleged rights which they claim have now been lost. Before we may apply the tests of constitutionality, there must be a showing of some right or interest which is protected by the Constitution. Here we find none. As we have pointed out previously, at common law grandparents have no presumptive right to custody or adoption of their grandchildren, nor even a right of visitation, absent an order of the chancery court. We are drawn to the conclusion that any rights existing in grandparents must be derived from statutes, as in Ark. Stat. Ann. § 57-135 (Supp.1979), or conferred by a court of competent jurisdiction pursuant to statutes. (Citations omitted.)
. . . .
Of paramount importance in this case, as in all adoption and custody matters, is what is in the best interest of the child. Quarles, above. In the present case, the appellants have been allowed to intervene in the adoption proceeding to present whatever evidence may have been relevant to the best interest of these children. Having had that opportunity, their rights have been preserved to them.
Id. at 304-305, 619 S.W.2d at 620-621.
The present case does not fall within the ambit of these decisions for several reasons. In both Quarles and Cox, the grandparents had had court-ordered visitation rights prior to the adoption proceedings and also at one time had had legal custody of their grandchildren. This court held that because the grandparents stood in loco parentis to their grandchildren in both cases, they had standing to intervene in the adoption proceedings. In the case *388 before us, however, the Johnsons have never had custody of Tyler. Custody has remained at all times with Melissa Tompkins. Further, while in their response to the petition for adoption the Johnsons alleged that they had visitation rights prior to the filing of the adoption petition, these rights were not court-ordered. Instead, the visitation rights were the result of a mutual agreement between the parties while the Johnsons' son was still alive. Melissa Tompkins discontinued those grandparental visits following the death of Jeffrey Johnson. We conclude that because the Johnsons had no court visitation rights regarding Tyler prior to the initiation of the adoption proceedings and had never stood in loco parentis to their grandchildren, this court's reasoning in Quarles and Cox does not apply.
Without a statutory grant enabling the Johnsons to be heard on the issue of Tyler's adoption or caselaw supporting their due process claim, there is no basis for reversing the probate court's order.
Affirmed.