Bonnie Weiss MEDLIN *v.* Tim WEISS

03-1043                                                   158 S.W.3d 140

Supreme Court of Arkansas
Opinion delivered April 8, 2004

*Joel W. Price*, for appellant.

One brief only.

BETTY C. DICKEY, Chief Justice. Bonnie Weiss Medlin appeals a Polk County Circuit Court order entered on May 21, 2003, granting visitation rights to Jesaca and Jamee Weiss with their half-sister Raegan, appellant's daughter. The trial court ordered visitation to be concurrent with that of noncustodial parent Tim Weiss, father of all the girls, as set forth in the trial court's order of March 10, 1999. The trial court further added that visitation rights of the siblings shall be pursuant to Ark. Code Ann. § 9-13-102 (Supp. 2002). This court affirms the trial court, clarifying the March 10, 1999 order delineating parental visitation rights, but reverses the trial court as to sibling visitation rights pursuant to § 9-13-102.

Bonnie and Tim Weiss married on October 30, 1993, and had one child, Raegan. They were divorced on March 10, 1999, and custody of Raegan was given to Bonnie, with visitation for Tim from 6 P.M. Friday until 6 P.M. Sunday on alternate weekends. At the time of the divorce, Bonnie neither requested, nor was awarded, child support. Later in 1999, Tim remarried his first wife, Ronda, with whom he had had two daughters prior to his marriage with Bonnie. When Tim's out-of-town job required that he leave at noon on Sundays Bonnie demanded that Raegan be returned early to her care, and would only allow sibling visitation with the two half-sisters in Bonnie's home.

On November 21, 2002, Bonnie filed a petition asking for child support for Raegan, and Tim counterclaimed that Bonnie "has consistently failed, refused and neglected to allow visitation with the parties' minor child." On December 26, 2002, Ronda filed a motion to intervene on behalf of Jesaca and Jamee, half-

sisters, asking that they be allowed to exercise visitation with Raegan during Tim's regular visitation times, whether Tim was there or not.

At a hearing on March 12, 2003, Weiss testified that his job required that he travel to other states and he was away from his home during certain times while Reagan was in his care, namely Sunday afternoons. Tim, Ronda, and the half-siblings wanted Raegan's visitation to continue until 6:00 P.M. Sunday; therefore, they filed the petition seeking third party visitation rights under Ark. Code Ann. § 9-13-102 (Supp. 2002), which provides:

> The circuit courts of this state, upon petition from any person who is a brother or sister, regardless of the degree of blood relationship, or, if the person is a minor, upon petition by a parent, guardian, or next friend in behalf of the minor, may grant reasonable visitation rights to the petitioner so as to allow the petitioner the right to visit any brother or sister, regardless of the degree of blood relationship, whose parents have denied such access. The circuit courts may issue any further order which may be necessary to enforce the visitation rights.

The trial court, in an April 2, 2003 letter to the parties, recognized that Ark. Code Ann. § 9-13-102 suffers, on its face, from the primary deficiency referenced in *Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002), in that the statute provides "no special weight to parent's decision", and that the statute suffers from an absence of a "best interests" standard. The trial court distinguished *Troxel v. Granville,* 530 U.S. 57, 120 S. Ct. 2054 (2000), and *Linder,* saying, in those cases, it was the right of a single custodial parent to be free of state intrusion in the parenting of a child. Here, the trial court continued, the dispute is between two fit parents, both parents have fundamental interests in parenting decisions, and the dispute is, essentially, which parenting decision should be given weight. The trial court also distinguished *Seagrave v. Price,* 349 Ark. 433, 79 S.W.3d 339 (2002), where there was only one fit parent. The trial court in this case noted, "[t]he sibling visitation statute, when applied in this situation, simply allows the court to give weight to the parenting decision of the noncustodial parent," and ended the letter by questioning the appropriateness of Bonnie's restrictive view of Tim's visitation time.

On April, 10, 2003, the trial court denied Bonnie's motion to dismiss and granted Ronda's motion to intervene. The trial court, in its May 28, 2003 order, denied the constitutional chal-

lenge, and allowed half-sibling visitation concurrent with the March 10, 1999 order, setting out Tim's parental visitation rights with Raegan. The trial court found that Bonnie "offered no convincing testimony for objecting to visitation between Raegan Weiss and her half sisters, Jesaca Autum Nikole Weiss and Jamee Dianah Lea Weiss."

The sole point on appeal is appellant's argument that "this statute is unconstitutional as written and as so applied to Bonnie Medlin under the facts of this case." In support, she cites a number of cases addressing visitation rights with minor children, beginning with *Linder, supra,* in which she quotes this court, "One of the substantive components that has emerged for the Fourteenth Amendment's guarantee of due process of law is the liberty right of a parent to have and raise children." *Id* at 342. However, neither the *Linder* case nor any other case to which appellant refers are cases in which there are two fit parents, as there are here. *In Re Custody of Nunn,* 103 Wash. App. 871, 14 P.3d 175 (2000); *Herbist v. Swan,* 102 Cal. App. 4th 813, 125 Cal. Rper.2d 836 (2002); *McGovern v McGovern,* 201 Ariz. 172, 33 P.3d 506 (Ariz. Ct. App. 2001); *State Department of Social and Rehabilitation Services v. Paillet,* 270 Kan. 646, 16 P.3d 962 (Kan. 2001); *Roby v. Adams,* 68 S.W.3d 822 (Tex. Ct. App. 2002); *Wickham v. Byrne,* 199 Ill.2d 309, 769 N.E.2d 1, (Ill. 2002); *Neal v. Nesvold,* 2000 OK 90, 14 P.3d 547 (Okla. 2000); *Hawk v. Hawk,* 855 S.W.2d 572 (Tenn. 1993); *Roth v. Weston,* 259 Conn. 202 (2002). Both parents, as the trial court says, have fundamental interests in parenting decisions, and the dispute is essentially, which parenting decision should be given weight. The liberty right of a parent to rear a child applies to both parents, and neither the state nor the absent parent has the right to intrude upon the decisions a fit parent makes while the child in his or her custody regarding what is in that child's best interest or with whom she can associate.

The trial court, in that April 2, 2003 letter to both attorneys, recognized that the "sibling visitation statute, on its face, suffers from the primary deficiency identified in *Linder,* that is, no special weight to parent's decision" and also suffers from an absence of a "best interests of the child" standard. We agree that the language of the statute may require revision by the legislature or its constitutionality addressed in some future case appealed to this court, but we decline to rule on it in this matter.

■ We review chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancery court unless it is clearly erroneous. *Lake View School District No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002). A finding of fact by the chancery court is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Lake View, supra; Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999).

The appellant may challenge the constitutionality of the sibling visitation statute, but the real issue here is whether one parent can make decisions that impinge on the visitation rights of the other. The trial court questioned the appropriateness of requiring that the appellant's father, Tim Weiss, be physically present during all hours of his visitation period. The court determined Raegan's half-sisters could exercise visitation with her during that time, between 6:00 P.M. of Friday and 6:00 P.M. on Sunday, when the father had visitation rights pursuant to the March 10, 1999 order. That order, signed by both Tim and Bonnie Weiss Medlin, allowed reasonable and liberal visitation by the father with Raegan, with no requirement that the father be continually in the presence of Raegan during each hour of those forty-eight hour visits. Tim Weiss, during those visitation periods, has the right, as a fit parent, to decide what is in the child's best interest, including visitation between and among his daughters, in his own home, without his being physically present.

■ The fact that the trial court clouded the issue of parental visitation rights by ordering concurrent sibling visitation rights under Ark. Code Ann. § 9-13-102 requires that this case be reversed and remanded for the trial court to amend its order consistent with this court's decision.

Affirmed in part, reversed and remanded in part.

IMBER and HANNAH, JJ., concur.

A NNABELLE CLINTON IMBER, Justice, concurring. I concur with the majority that Appellee Tim Weiss's visitation should continue as set forth in the original divorce decree and that the trial court's award of visitation rights to Raegan Weiss's half-sisters should be reversed. I write to clarify the grounds on which I believe the majority should have reversed the award of sibling visitation. Contrary to the majority's assertion, the trial court did not "[cloud]

the issue of parental visitation rights by ordering concurrent sibling visitation under Ark. Code Ann. § 9-13-102." The issue before the trial court *was* sibling visitation, because Raegan's half-sisters, by their mother as next friend, had requested visitation in their petition to intervene.

The circumstances leading up to the trial court's order were as follows. Appellant Bonnie (Weiss) Medlin, Raegan's mother, had filed a petition for child support against her ex-husband, Tim Weiss, who is Raegan Weiss's father. In response to the petition for child support, Tim Weiss filed a pleading in which he complained that Bonnie was attempting to interfere with his visitation. He alleged that, whenever he was required by his job to leave town on Sunday afternoon, Bonnie was insisting that Raegan be returned to her before the end of his scheduled visitation at 6:00 p.m. He asked the trial court for leave to keep Raegan the full scheduled visitation period, even if he was not present, in order that she might spend that time with her half-siblings.

On December 26, 2002, before the trial court ruled on the child support or visitation issues, Tim's wife Ronda Weiss petitioned to intervene on behalf of Raegan's half-sisters, Jesaca and Jamee, and asked the trial court to award visitation to Jesaca and Jamee pursuant to the Sibling Visitation Statute, Ark. Code Ann. § 9-13-102 (Repl. 2002). Bonnie then filed a motion to dismiss the petition to intervene. On April 10, 2003, the trial court issued an order denying Bonnie's motion to dismiss and granting the motion to intervene. Therefore, contrary to the majority's conclusion that the trial court clouded the issue of parental visitation rights by addressing the visitation rights of the half-siblings, the hearing held on May 21, 2003, was for the purpose of determining whether the half-siblings, as Intervenors, were entitled to visitation with Raegan. The trial court found in the affirmative and, on May 28, 2003, entered an order granting visitation rights to Jesaca and Jamee, ordering that those visitation rights were to be concurrent with and during the same times as Tim Weiss was granted visitation.

I believe the issue that should be considered by the majority is found in Paragraphs 3 and 4 of the trial court's May 28, 2003, order, which reads as follows:

3. That Plaintiff [Bonnie Medlin] has offered no convincing testimony for objecting to visitation between Raegan Weiss and her half sisters, Jesaca Autum Nikole Weiss and Jamee Dianah Lea Weiss.

4. That it is in the best interest of Raegan Weiss to have a relationship with her siblings, Jesaca Autum Nikole Weiss and Jamee Dianah Lea Weiss.

The trial court had noted in his letter opinion, dated April 2, 2003, that both Bonnie Medlin and Tim Weiss were fit parents. However, the trial court mischaracterized the issue in his letter opinion as follows:

> In [*Troxel v. Granville*, 530 U.S. 57 (2000) and *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002)], the right of a single custodial parent to be free of state intrusion in the parenting of a child was at stake. Here, we have a dispute between *two fit parents*. And, as Mr. Ryan points out, both parents have fundamental interests in parenting decisions and *the dispute is, essentially, which parenting decision should be given weight.* This case may also be distinguished from *Seagrave v. Price*, 349 Ark. 433, 79 S.W.3d 339 (2002), where one parent was not fit. The sibling visitation statute, when applied *in this situation*, simply allows the court to give weight to the parenting decision of the non–custodial parent. . . .

We can see from his letter opinion, the trial judge considered the issue to be between Bonnie and Tim, as Raegan's two fit parents. However, the dispute before the trial court was not one of Bonnie's parenting decisions tempered against Tim's parenting decisions. The dispute before the trial court, regarding the *Intervenors*, was whether or not Raegan's *half-sisters*, could intervene and assert visitation rights over the objection of Bonnie Medlin. The fact that this dispute was between a fit parent, Bonnie Medlin, and two third parties, the half-sisters, is critical to understanding where the trial court went wrong.

In order to keep Tim Weiss's visitation intact and prevent Bonnie from interrupting it prior to the 6:00 p.m. Sunday deadline, the trial court need only have ordered that Tim's visitation schedule in the original divorce decree was to be left unchanged. The trial court certainly had the power to order that, regardless of whether Tim was present or not, he had parental authority to decide where Raegan spent her time from 6:00 p.m. on Friday

until 6:00 p.m. on Sunday, and that Bonnie could not interfere with Tim's parenting decisions during those times.

Instead, the trial court went further and granted the Intervenors' request for visitation rights over the objection of Bonnie Medlin, after finding Bonnie was a fit parent. As the United States Supreme Court held in *Troxel v. Granville*, a third party cannot be awarded visitation rights over the objection of a fit custodial parent:

> [The statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest [of the child] determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington, a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

> \* \* \* \*

> The Superior Court's order was not founded on any *special factors* that might *justify* the State's interference with Granville's fundamental right to make decisions concerning the rearing of her two daughters.

*Troxel v. Granville*, 530 U.S. at 67–68.

In *Troxel v. Granville*, it was a grandparent who was the third party attempting to gain visitation rights over the objection of a fit custodial parent. In this case, the third parties are two half-siblings. Nonetheless, as in *Troxel*, the trial court here overturned a parenting decision by Bonnie Weiss, a fit custodial parent, solely on the basis of the court's determination of the child's best interests.

In *Linder*, we used this reasoning from *Troxel v. Granville, supra*, to hold the Arkansas Grandparent Visitation Act unconstitutional as applied to the appellant:

> It appears that the trial court found Lea Ann to be a fit parent for all purposes save one: making the decision about Brandon's relationship with his paternal grandparents. This finding of fitness is cor-

roborated by the court's grant of custody to her and his remarks about her suitability as a parent and her loving bond with Brandon. . . . The question then becomes whether unfitness solely to decide visitation matters is a compelling intrusion on a parent's fundamental parenting right and overcomes the presumption in the parent's favor. We conclude that it is not. So long as Lea Ann is fit to care for Brandon on a day-to-day basis, the Fourteenth Amendment right attaches, and the State *may not interfere without a compelling interest to do so.* As Justice O'Connor wrote in *Troxel,* the State must accord "special weight" to the mother's decision so long as she is a fit mother. *See Troxel* at 68-69, 120 S. Ct. 2054.

*Linder v. Linder,* 348 Ark. at 351, 72 S.W.3d at 857 (emphasis added).

Here the situation is decidedly different than that in *Troxel* or *Linder,* because the visitation at issue is presently occurring during the father's regularly-scheduled visitation period. Therefore, it is understandable that the trial court confused the issue as one between two fit parents rather than between a fit parent and two third parties. However, one need only read the trial court's order to see its breadth:

It is Therefore, CONSIDERED, ORDERED, AND AD-JUDGED that the Intervenors, Jesaca Autum Nikole Weiss and Jamee Dianah Lea Weiss, *shall be entitled to visitation rights* with their half sister, Raegan Weiss, *concurrent with and during the same times* as set forth in the [divorce decree] whereby the Defendant, Tim Weiss, was granted visitation rights with said Raegan Weiss, *and that said visitation rights by the aforementioned siblings shall be pursuant to and in accordance with the provisions as set forth in Ark. Code Ann. § 9-13-102 (Repl. 2002).*

(emphasis added).

I note that the half-siblings' visitation rights are not *dependent* upon Tim's rights, but are merely to run concurrent and at the same time schedule as his visitation. In addition, the half-siblings' visitation rights were awarded pursuant to the Sibling Visitation Statute, which has no provision for a custodial parent's fundamental right to make parenting decisions for his or her child. The trial court's award of visitation rights to the half-siblings, thus, are enforceable apart from and without reference to Tim's rights. In other words, if, at any time in the future, Tim dies or is divorced from the half-siblings' mother, the sibling visitation rights would still be in effect.

As is clear from both *Troxel* and our own precedent, it is a constitutional violation of a fit parent's fundamental parenting decisions to award visitation over the objection of that fit parent. The fact that one fit parent — in this case, the father — does not mind a third party having visitation with his child does not confer visitation *rights* on that third party without the consent of the other parent. On the facts of this case, Tim is entitled to have Raegan during his entire visitation schedule, whether he is present or not, and if it is his decision that Raegan visits with her half-sisters during that time, Bonnie has no right to interfere with that decision any more than she has a right to interfere with his decision to leave the child with a babysitter or a Sunday School teacher. However, to award visitation *rights* to a third party, i.e., someone other than another fit parent, violates the principles set out in *Troxel* and *Linder*. For this reason, I believe the trial court's order should be reversed.

HANNAH, J., joins.