2011 Ark. App. 170

**Butch WALCHLI and Elizabeth Walchli, Appellants**

v.

**Joe MORRIS and Tanni Morris, Appellees.**

**No. CA 10–834.**

Court of Appeals of Arkansas.

March 2, 2011.

Newton Donald Jenkins Jr., Van Buren, for appellants.

Mark Joseph Johnson, Paris, for appellees.

RITA W. GRUBER, Judge.

Elizabeth and Butch Walchli, the parents of A.W., bring this appeal from an order of the Sebastian County Circuit Court establishing monthly visitation between A.W. and his paternal grandmother, Tanni Morris, and her husband, Joe Morris. The Walchlis bring two points on appeal: first, they contend that the Morrises had no standing to pursue an action for grandparent visitation under Ark.Code

Ann. § 9–13–103; second, they claim that the circuit court abused its discretion in awarding attorney's fees to the ad litem and assessing one-half of the fees against the Walchlis. We agree with the Walchlis. Accordingly, we reverse the court's order granting visitation to the Morrises and order the court to dismiss the Morrises' motion. We also reverse that part of the court's order assessing attorney's fees against the Walchlis.

A.W. was born on December 31, 2002, to RayAnn Williams, who was not married at the time but was in a relationship with Butch Walchli. On December 29, 2005, a paternity order was entered establishing Butch as the natural father of A.W. and awarding joint custody to Butch and RayAnn, with Butch as the primary custodial parent. No other custody order has ever been entered. RayAnn apparently had little contact with A.W., and he lived with the Morrises during much of his life from infancy until the fall of 2008, when Butch and Elizabeth got married and A.W. began kindergarten.

On December 5, 2008, the Morrises filed a motion for change of custody under the file number used for the paternity/custody case from 2005.[1] On April 13, 2009, the Morrises filed an amended motion for change of custody and, in the alternative, for grandparent visitation pursuant to Ark. Code Ann. § 9–13–103. At some point during the summer of 2009, RayAnn terminated her parental rights to A.W., and on August 13, 2009, A.W. was adopted by Elizabeth Walchli. On January 5, 2010, Butch filed a motion to dismiss the Morrises' motion for custody/visitation, contending that they had no standing to assert grandparent-visitation rights under Ark.Code Ann. § 9–13–103 in light of the

adoption and that no other Arkansas statute authorized visitation under the circumstances. The Morrises responded that, in spite of the adoption, A.W. was illegitimate and thus they did have standing under Ark.Code Ann. § 9–13–103.

On May 26, 2010, the circuit court held a hearing and denied Butch's motion to dismiss. As the adoptive mother of A.W., Elizabeth Walchli was added as a party, and the case then proceeded to a bench trial on the Morrises' motion. On June 30, 2010, the court entered a final order granting the Morrises one overnight weekend visitation per month.

On May 28, 2010, at 11:34 a.m., the court entered an order awarding fees to the attorney ad litem in the amount of $2,895 and requiring the Walchlis to pay half and the Morrises to pay half. Later that day, at 3:12 p.m., a petition for attorney's fees was filed by the attorney ad litem. The Walchlis filed a response to the petition for fees, objecting to the fees based on the high hourly rate, an allegedly overstated amount of time, and the economic hardship it would place on them. After realizing that the court had already granted the ad litem's motion, the Walchlis filed a motion to reconsider and set aside the award. The court denied the Walchlis' motion to reconsider on June 30, 2010. This appeal followed.

## I. Arkansas Code Annotated Section 9–13–103

Appellants' first point on appeal is that their motion to dismiss should have been granted as a matter of law because the Morrises had no standing to proceed under Ark.Code Ann. § 9–13–103. We give no deference to a circuit court's con-

---

1. The Morrises eventually filed a motion to intervene in the case in April 2009, which the court granted on July 6, 2009.

clusions of law and therefore review this issue of statutory construction de novo on appeal. *Pack v. Clark,* 2010 Ark. App. 756, 379 S.W.3d 676.

A grandparent's right to petition for visitation with his or her grandchild, while not available at common law, was created by statute in Arkansas. *Linder v. Linder,* 348 Ark. 322, |₄348, 72 S.W.3d 841, 855 (2002). It is limited to those grandparents who meet the statutory requirements set forth in Ark.Code Ann. § 9-13-103(b) (Repl.2009), which provides as follows:

> (b) A grandparent or great-grandparent may petition a circuit court of this state for reasonable visitation rights with respect to his or her grandchild or grandchildren or great-grandchild or great-grandchildren under this section if:
>
> (1) The marital relationship between the parents of the child has been severed by death, divorce, or legal separation;
>
> (2) The child is illegitimate and the petitioner is a maternal grandparent of the illegitimate child; or
>
> (3) The child is illegitimate, the petitioner is a paternal grandparent of the illegitimate child, and paternity has been established by a court of competent jurisdiction.

The parties agree that the Morrises' right under this statute, if they have one, derives from section 103(b)(3). Tanni Morris is a paternal grandparent and paternity has been established. The issue is whether A.W. is illegitimate.

The Morrises contend, and the circuit court agreed, that A.W. was illegitimate because he is the illegitimate son of Ray-Ann Williams and Butch Walchli. They argue that illegitimate means "born out of wedlock"; Elizabeth's adopting him does not change the fact that A.W. was "born out of wedlock." Citing Ark.Code Ann. § 28-9-209, they contend that the only

way an illegitimate child will become legitimate is by the subsequent marriage of the natural mother to the putative father, who recognizes the child as his own. In other words, following the Morrises' argument to its logical conclusion, A.W. will remain illegitimate forever—in spite of the fact that his legal parents are married and the fact that RayAnn has no legal relationship whatsoever with A.W.—or until Butch marries RayAnn. |₅We disagree with the Morrises that A.W. is illegitimate, and we hold that the court erred as a matter of law in so finding.

A.W. is the son of Elizabeth and Butch Walchli, who are married. If Elizabeth were A.W.'s natural mother, there is no question—and no argument from the Morrises—that A.W. would be legitimate. We hold that the fact that Elizabeth is A.W.'s mother through adoption, rather than through natural birth, makes no legal difference for purposes of Ark.Code Ann. § 9-13-103. A.W. is not illegitimate.

The effect of the adoption on the relationship between RayAnn and A.W. was to make A.W. "a stranger" to RayAnn "for all purposes." Ark.Code Ann. § 9-9-215(a)(1) (Repl.2009). "This includes inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship." *Id.* The effect of the adoption on the relationship between Elizabeth and A.W. was to "create the relationship of parent and child" between Elizabeth and A.W., as if A.W. were her legitimate blood descendant, "for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted individual from their operation or

effect." Ark.Code Ann. § 9–9–215(a)(2). It would require a tortured interpretation of this statute for us to hold that A.W., the legal son of two married parents, is illegitimate because his legal mother obtained that status through adoption rather than by birth. The statute specifically states that adoption creates the relationship of parent and child "for all purposes ... including ... applicability of statutes."

■ The Morrises' sole reliance upon Ark.Code Ann. § 28–9–209 is misplaced. This statute is in the Probate Code and deals with the rights of a child born out of wedlock to inherit from his mother and father. We do not find that it limits our understanding of the word "illegitimate" in interpreting the language set forth in Ark. Code Ann. § 9–13–103. A.W.'s legal parents are married. He is therefore not illegitimate. Because A.W. is not "illegitimate" for purposes of Ark.Code Ann. § 9–13–103(b), Tanni Morris had no standing to assert grandparent-visitation rights under that statute, and the circuit court should have dismissed her petition.

## II. *In Loco Parentis*

■ We also reject the Morrises' contention that, because they stood in loco parentis to A.W. at times during his life, they were entitled to visitation. While the circuit court noted in its long comments from the bench that, "we have the grandmother who was very involved in the child's life, the grandmother and grandfather ..., who were standing in loco parentis many times," the court's order contained no finding that the Morrises stood in loco parentis. Moreover, the court never specifically stated either orally or in writing that visitation was appropriate because the grandparents stood in loco parentis to A.W. Indeed, the above-quoted remark by the court was followed by its statement that the grandparents thus

"built a relationship that qualifies under the statute"—that is, the grandparent-visitation statute.

Further, Ms. Morris is A.W.'s grandmother, not a co-parent. The most recent cases affirming an award of visitation on the basis of a petitioner's standing in loco parentis to a child are *Robinson v. Ford–Robinson*, 362 Ark. 232, 208 S.W.3d 140 (2005), and *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731. In *Robinson*, the trial court awarded visitation to the child's stepmother in a divorce proceeding. The child's biological mother relinquished her rights when the child was eight months old, and the stepmother was the only mother the child had ever known. The stepmother had acted as a co-parent with the child's father for seven years, from the time the child was eighteen months old.

Similarly, in *Bethany*, the supreme court affirmed a trial court's order finding that Jones stood in loco parentis to the child and awarding visitation. In *Bethany*, Jones and her same-sex partner Bethany made the decision to start a family together. Bethany became pregnant through artificial insemination. After the child's birth in 2005, Jones stayed home with the child as the primary caregiver, and Bethany returned to work. The child referred to Jones as "Mommy" and to Bethany as "Mama." The parties agreed to continue to co-parent the child after they ended their romantic relationship in 2008. A disagreement over parenting led to the lawsuit. In affirming the trial court's findings, the supreme court noted that its holding was "grounded in the specific facts of this case." *Id.* at 14, 378 S.W.3d at 739. The court rejected Bethany's argument that its holding would open a floodgate allowing anyone to seek visitation with a minor child and cited a Kentucky case for the following statement: "After reciting these pertinent facts, the Kentucky court concluded that the case was distinguishable

from the situation where there is a grandparent, a babysitter, or a boyfriend or girlfriend of the parent, who watched the child for the parent, but who was never intended by the parent to be doing so in the capacity of another parent." *Id.* at 13, 378 S.W.3d at 739.

These cases are distinguishable. In both *Bethany* and *Robinson,* the petitioner's relationship to the child was as a primary caregiving parent. In both cases, the child had only one custodial, biological parent along with the petitioning, nonbiological co-parent. The petitioner in both cases stood in the place of a parent to the child. In this case, Ms. Morris is A.W.'s grandparent. A.W. lives with both of his parents. Although she has been a very actively involved grandparent and has helped Butch by watching A.W. and taking care of him while Butch worked, there was no evidence that Butch intended for Ms. Morris to do so in the capacity of another parent. Butch has always had legal custody over A.W.; Ms. Morris has never had any legal rights whatsoever. The supreme court has made it clear that "at common law, grandparents have no presumptive right to custody ... of their grandchildren and no right of visitation, absent an order of the circuit court." *Henry v. Buchanan,* 364 Ark. 485, 490, 221 S.W.3d 346, 349 (2006) (citing *Cox v. Stayton,* 273 Ark. 298, 619 S.W.2d 617 (1981)). The court stated further that "any rights existing in grandparents must be derived from statutes." *Id.; see also Troxel v. Granville,* 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (stating that "the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance"). In this case, any right the Morrises had to visitation was through Ark. Code Ann. § 9–13–103(b). Therefore, we reverse the circuit court's order and remand for the court to dismiss the Morrises' motion.

### III. *Fees for Attorney Ad Litem*

The Walchlis also contend that the circuit court abused its discretion in awarding excessive fees to the attorney ad litem and in assessing half of those fees against them. A circuit judge may appoint an attorney ad litem when he determines that it will be helpful in a case in which custody is an issue. Ark.Code Ann. § 9–13–101(e)(2) (Repl.2009). The attorney ad litem's fees "shall be paid from funds appropriated for that purpose to the Administrative Office of the Courts." Ark.Code Ann. § 9–13–101(e)(4). The Administrative Office has established guidelines providing a maximum amount of expenses and fees per hour that will be paid. Ark.Code Ann. § 9–13–101(e)(6). The circuit court may require the parties to pay all or a portion of the fees "depending on the ability of the parties to pay." Ark.Code Ann. § 9–13–101(e)(5)(B).

In this case, the court did not transmit an order to the Administrative Office of the Courts for payment of the fees. It required the parties to pay all of the fees submitted by the attorney ad litem. From the record, it appears that the court made no determination that the fees complied with the Administrative Office's guidelines. The court also failed to hold a hearing or make a specific determination regarding the ability of the parties to pay. In light of our decision holding that the Morrises had no standing to pursue this case, we hold that it was an abuse of discretion to assess the attorney ad litem's fees against the Walchlis and reverse that part of the court's order.

Reversed and remanded.

PITTMAN and ROBBINS, JJ., agree.