2011 Ark. App. 633

Tim FOX, Appellant

v.

Julie GLASSING, Appellee.

No. CA 11–96.

Court of Appeals of Arkansas.

Oct. 26, 2011.

Richard Ernest Worsham, Little Rock, for appellant.

Dustin Alan Duke, Little Rock, for appellee.

RITA W. GRUBER, Judge.

Tim Fox appeals from an order awarding primary physical custody of the parties' minor son, J.F., to the child's mother, Julie Glassing, and failing to award him visitation with Ms. Glassing's son, S.G. Dr. Fox contends that the circuit court erred by awarding physical custody to Ms. Glassing because it was not in J.F.'s best interest. He argues that the circuit court erred in refusing to set his visitation with S.G. because Dr. Fox stood in loco parentis to S.G. and it was in S.G.'s best interest. We affirm the court's custody determination with regard to J.F., but with regard to the court's denial of visitation with S.G., we remand for further proceedings consistent with this opinion.

Ms. Glassing and Dr. Fox lived together in Colorado when J.F. was born on September 8, 2003. S.G., Ms. Glassing's son, three and one-half years old when J.F. was born, also lived with the parties. In November 2006, Dr. Fox took a veterinarian job in Arkansas, and he and J.F. moved to Arkadelphia. Ms. Glassing and S.G. followed several months later. The parties, who never married, separated in January 2008, and Ms. Glassing filed a petition seeking to establish the paternity of Dr. Fox and to require him to pay child support.

Dr. Fox admitted paternity and requested custody of J.F. In March 2008, after a brief attempt at reconciliation, Dr. Fox moved back to Colorado. The court entered an order on May 14, 2008, establishing paternity and ordering Dr. Fox to pay child support. Although the children remained with Ms. Glassing in Arkadelphia, Dr. Fox continued to pursue custody of J.F. and requested visitation with S.G. on the basis of his in loco parentis relationship.[1] After a hearing in August 2010, the court entered an order awarding primary physical custody of J.F. to Ms. Glassing, with liberal visitation to Dr. Fox, and denying Dr. Fox court-ordered visitation with S.G. The court left the decision of visitation with S.G. to Ms. Glassing's discretion but encouraged her to allow it. Dr. Fox filed a motion for reconsideration, which the court denied. Dr. Fox brought this appeal.

### I. *Custody of J.F.*

For his first point on appeal, Dr. Fox contends that the trial court erred in

---

1. The custody and visitation petitions were separate proceedings that were consolidated in May 2009.

awarding primary physical custody of J.F. to Ms. Glassing because it is not in J.F.'s best interest to live with her. Specifically, he points to evidence that Ms. Glassing has a substance-abuse problem, which he claims endangers J.F.

Evidence presented at trial established that Ms. Glassing was convicted of DWI in 2006 while living in Colorado and thereafter completed a month-long inpatient rehabilitation. Dr. Fox also produced evidence that Ms. Glassing made purchases from a liquor store in Arkansas during 2007, 2008, and 2009. Additional testimony revealed that National Park Medical Center in Hot Springs fired Ms. Glassing from her nursing position in 2007 after the hospital discovered missing narcotics in her possession and a subsequent drug test was positive for opiates, morphine, and propoxyphene.

Ms. Glassing did not deny her past substance abuse, but she testified that, while she has a drink "two, three times a year," she no longer had a drinking or substance-abuse problem. J.F.'s soccer coach, Ms. Glassing's neighbor, and Ms. Glassing's employer all testified that they had seen no evidence of alcoholism or substance abuse. Louise Buck, Ms. Glassing's neighbor, testified that she had known Ms. Glassing and her children for over two years, that she saw Ms. Glassing or was in her home almost daily, and that she had never seen Ms. Glassing drink alcohol. She testified that the boys were clean, well-behaved, and very close to their mom. Ample testimony provided that J.F. was thriving in school and that Ms. Glassing was very involved in J.F.'s school and extra-curricular activities, including swimming, t-ball, and soccer.

■ We give a trial court great deference in its determination of what is in a child's best interest for custody purposes. *See, e.g., Hamilton v. Barrett,* 337 Ark. 460, 465–66, 989 S.W.2d 520, 523 (1999).

We will not reverse the trial court's findings unless they are clearly erroneous, *Ford v. Ford,* 347 Ark. 485, 491, 65 S.W.3d 432, 436 (2002), and we give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Hamilton,* 337 Ark. at 465, 989 S.W.2d at 523.

■ In this case, the circuit court recognized that Ms. Glassing had a past substance-abuse problem but found that the weight of the evidence indicated that she had managed to control it since the parties' separation in 2008. The court found that she had provided for her children's needs; that the children were, by all accounts, respectful and well-behaved, clean, well-dressed, and healthy; that the children performed exceptionally well in school with their mother's encouragement and support; and that Ms. Glassing had done a good job of caring for her children. The trial court noted the detrimental effect of separating the half-siblings. Although the court also noted that Dr. Fox was intelligent, capable, and fit, it found it was in J.F.'s best interest to remain with his mother and half-brother, S.G. After reviewing the evidence, and in light of the deference we afford to the trial court in matters of credibility, we cannot say that the court clearly erred in awarding primary physical custody to Ms. Glassing.

## II. *Visitation with S.G.*

For his second point on appeal, Dr. Fox contends that the circuit court erred in refusing to award visitation with S.G. to him. The evidence on this issue is not in material dispute. While Dr. Fox was neither S.G.'s biological father nor his stepfather, he lived with S.G., J.F., and Ms. Glassing for five years, from the time S.G. was almost four until he was eight. S.G. has never met his biological father, and both parties testified that S.G. referred to

Dr. Fox as dad. When Dr. Fox was permitted visitation pending the hearing, he saw both S.G. and J.F. Ms. Glassing required that any visitation be by court order. Ms. Glassing testified that she did not object to Dr. Fox's continuing to have visitation with both boys.

In spite of this testimony, the court denied Dr. Fox's request for court-ordered visitation and left to Ms. Glassing's discretion whether to allow visits between S.G. and Dr. Fox. The court stated that it believed that both parents loved J.F. and S.G. The court also noted that the parties agreed that S.G. referred to Dr. Fox as his father, that Dr. Fox treated S.G. very well, and that he continued to have meaningful visitation with S.G. "as a father figure." The court placed blame on both parties for their "bitter and uncooperative relationship." The court then concluded that "Fox is not biologically related to [S.G.] and the mother is not an unfit parent. Fox will not be required to provide any child support for [S.G.] and visitation between [S.G.] and Fox is encouraged but will ultimately be done at Glassing's discretion."

■ We turn to the law governing an award of visitation to a person who is not the child's legal parent. In *Robinson v. Ford–Robinson,* 362 Ark. 232, 208 S.W.3d 140 (2005), the supreme court made it clear that a court may award visitation to a stepparent who stands in loco parentis to a child over the natural parent's objection if the court determines that it is in the best interest of the child. The court also stated that the natural-parent presumption, which governs in stepparent-custody cases, was not applicable in cases awarding visitation only. *Robinson,* 362 Ark. at 239, 208 S.W.3d at 143. In other words, the natural parent does not have to be unfit in order for the trial court to award visitation if the court finds that the party stands in loco parentis to the child and that it is in the child's best interest to award visitation.

In *Bethany v. Jones,* 2011 Ark. 67, 378 S.W.3d 731, the supreme court held that the person may qualify as the child's in loco parentis parent even where the party is not married to the biological parent. The court reasoned that the doctrine of in loco parentis focuses on the relationship between the child and the person asserting that they stand in loco parentis and not on the relationship between the two adults. *Bethany,* 2011 Ark. 67, at 10, 378 S.W.3d at 737.

In this case, the proof demonstrated that the relationship between Dr. Fox and S.G. was that of father and son. The court's order does not recite the words "in loco parentis," but the court acknowledged the proof of his status, which was not in dispute. *See Guest v. San Pedro,* 70 Ark. App. 389, 19 S.W.3d 62 (2000). It appears that the trial court decided the visitation issue on the mistaken belief that it could not lawfully award visitation with S.G. because Dr. Fox was not S.G.'s biological father and Ms. Glassing was not an unfit mother. We remand for the court to decide this issue consistent with the law as clarified herein.

Affirmed in part; remanded in part.

PITTMAN, GLADWIN, ROBBINS, ABRAMSON, MARTIN, HOOFMAN, agree.

WYNNE, J., dissents.

ROBIN F. WYNNE, Judge, dissenting.

I agree with the decision to affirm the trial court's award of custody of J.F. to appellee. However, I disagree with the decision to remand to the trial court regarding the denial of appellant's request for visitation with S.G.

The majority is correct in stating that visitation may be awarded to a stepparent who stands in loco parentis to a child if the court determines that such visitation is

in the best interest of the child. *See Robinson v. Ford–Robinson,* 362 Ark. 232, 208 S.W.3d 140 (2005). The majority is likewise correct in stating that there is evidence in the record to support a determination that the relationship between appellant and S.G. was that of father and son. Although the majority does recite that the supreme court's decision in *Robinson* permits a trial court to award visitation to a stepparent who acts in loco parentis, it appears to have overlooked the discretion granted to the trial court in reaching its holding on this issue. The majority states that the trial court acted under the mistaken belief that it could not award visitation to appellant when it entered the order denying the visitation. However, the trial court's order does not clearly state that the court was operating under any such misconception. I do not believe that this court should conclude, based upon speculation, that a trial court was not aware of the law when it entered an order. The case law grants a trial court discretion regarding whether to award visitation under these circumstances, and the trial court exercised its discretion in this case. I would affirm the order of the trial court in its entirety.