Kevin MEINS *v.* Judy C. MEINS (Shook)

CA 05-415 218 S.W.3d 366

Court of Appeals of Arkansas
Opinion delivered November 30, 2005

*Hubert W. Alexander,* for appellant.

*Dover Dixon Horne PLLC,* by: *W. Michael Reif,* for appellee.

A NDREE LAYTON ROAF, Judge. Kevin Meins appeals from the trial court's modification of his visitation with his two minor children, in which his daily weekday visitations were terminated and his visitation was reduced to alternate weekends. Kevin alleges that the trial court erred in allowing certain expert testimony under the medical-hearsay exception and alleges that the evidence does not support the modification of his visitation rights. We affirm.

Kevin Meins and Judy Meins were divorced in July 2003. Judy received full custody of the couple's two children, Kaleb and Lindsey, while Kevin received certain visitation rights outlined in the decree. Kevin's visitation included picking the children up from school each afternoon and taking them to his home, where Judy would pick them up after she left work at about 5:00 p.m.

The decree listed several requirements concerning visitation. The most pertinent provisions are as follows:

> h. For all periods of visitation Defendant (Judy) will call Plaintiff (Kevin) prior to picking up the minor children. Plaintiff will have the minor children ready to leave and allow the minor children to go to Defendant's vehicle. There shall not be any contact between the parties during the exchange of the children.
>
> i. Neither party will make any disparaging remarks about the other in the presence of the minor children.
>
> j. During all periods of visitation and in the presence of the minor children Plaintiff shall not consume any alcohol. . . .
>
> m. Each party is enjoined and restrained from doing, attempting to do, or threatening to do any act injuring, mistreating, molesting or harassing the other party.
>
> 5. Plaintiff shall make an appointment with Dr. Harley J. Harber for treatment of anger management counseling, substance abuse counseling and assessment for medication as well as individual counseling. . . .

Subsequent to the divorce, the after-school visitation arrangement ran smoothly for a while. Judy, however, began to believe that Kevin had not followed some of the terms of the divorce decree and that Kevin had personal issues constituting a material change in circumstances that warranted an amendment of the visitation terms. Judy filed a motion for contempt, in which she accused Kevin of violating the terms of the decree and of making disparaging remarks about her and her new husband in front of the children. At the hearing, the trial court allowed, over Kevin's hearsay objections, certain expert testimony of social worker, Lisa Doan, under the medical exception to hearsay. Ms. Doan had provided therapy to Lindsey, who suffered from self-esteem issues, and Kaleb, who has Tourette's Syndrome, anxiety issues, and ADHD.

Ms. Doan testified that the children exhibited anxiety and confusion over the current relationship of their parents. She testified that the children told her that Kevin had made certain disparaging remarks, including saying that their stepfather, Glen Shooks, had slept with their mother before marriage and that he had a "black" heart and should not be allowed around them. Ms. Doan also testified that, in addition to defying the divorce decree by walking the children to Judy's car, Kevin would confuse the children when he would include Judy in his goodbye "I love yous." Ms. Doan said that the children then had difficulty understanding the divorce and why their mother could not love their father.

Additionally, Ms. Doan testified that, on one occasion, she had spoken with Kevin over the telephone, and he was slurring his words and being argumentative. She stated that Kevin's drinking scared Kaleb, who had related to her a story about a time when his father almost had a car accident after he had been drinking. Lindsey told Ms. Doan that her father "acted weird" when he drank. Ms. Doan expressed her concern over the conflict that the children were experiencing and suggested that it needed to stop. She recommended that Kevin seek counseling and assistance so that he could get his life together and also suggested a neutral setting for transferring the children.

Judy testified that Kevin intimidated her when he would bring the children out to the car. Although the divorce decree required Kevin to have no contact with Judy, he would walk the children to the car, carry their backpacks, and strap them into their

seatbelts. He would then tell the children that he loved them and would sometimes tell Judy that he loved her too.

In 2004, Kevin was convicted twice for DWI. After the second conviction, he received a sentence of seven days of community service and his license was suspended until February 28, 2006. Kevin failed to complete his community service requirement and was jailed for ten days. Despite having a suspended license, Kevin still picked up the children after school. Judy testified that she had personally seen Kevin driving the children around after his license was suspended.

Judy also indicated that she had spoken to Kevin on several occasions when he was intoxicated and that he had spoken to and interacted with his children while he was intoxicated. She testified that on the day of her wedding to Glen Shook, Kevin left a message on the family answering machine calling Glen "white trash" and a "m***** f*****."

Judy also testified that Kevin had called her vulgar names in front of the children, had called her a liar, and had told the children that she did not love them and only did things to make herself happy, causing the children to become extremely nervous and anxious. Judy's sister also testified that Kevin had made disparaging remarks about Judy in front of the children. Additionally, Judy suggested that Kevin failed to give Kaleb his medication during weekend visitations.

Kevin testified that, after his license was suspended, his mother drove him to pick up the children after school. Kevin admitted that he did walk the children to Judy's car and stated that he told Judy "I love you" in order to demonstrate that people could still care about each other even though everything had "gone to hell." Kevin accused Judy of having an affair with her current husband while both were still married and said that they lived in the same house with the children for about six months before they actually got married. Kevin said that he nevertheless did not then contest the custody arrangement because of his DWI conviction.

Kevin admitted to leaving a derogatory message on Judy's answering machine on the day of Judy's wedding, but he claimed that Glen was a bad person who ran a porn site and who was on his fifth wife and had mistreated all his wives and children. Kevin also admitted that he had driven the children with no license, on those occasions when his parents were out of town. He denied that he

failed to give his son his medication. Kevin asserted that he had been receiving treatment for anger, depression, alcoholism, and ADD, but did not see the doctor specified in the divorce decree because he felt more comfortable going to his own doctors. Kevin also testified that he only had a problem with alcohol on occasion and that he was "working on fixing" that problem. Kevin also claimed that he had only walked the children to the car on two occasions to communicate with her about the children after Judy asked him to stop.

Kevin's mother testified on his behalf and claimed that Judy's bringing escort cars to pick up the children had negatively affected the children. She said that she had had confrontations with these people and had made police reports each time she noticed a car waiting outside her house. Kevin's mother admitted that Kevin walked the children to the car, carried their backpacks, and buckled them into their safety belts. She also admitted that Kevin had a difficult time adjusting to Judy's new marriage and had resorted to using alcohol, but stated that he did not currently have an alcohol problem and that he had his anger under control. In addition, she testified that Kaleb did not get his medication during the weekends because she and Kevin felt he did not need it on the weekends.

The trial judge found Kevin in contempt for violating the court order by walking the children to Judy's car and continuing to have contact with her. The trial court further concluded that the on-going problems between the parties warranted modification of visitation, especially in light of Kevin's continued use of disparaging remarks. The trial court eliminated Kevin's weekday visitations and allowed him only alternate weekends. The court ordered Kevin to provide proof of the installation of an interlock ignition device on his car before he could personally drive the children; until then, someone else had to pick them up. The trial court also ordered Kevin to give Kaleb all of his medication and gave Kevin thirty days to go to the court-specified doctor for counseling. Kevin now appeals.

Kevin first argues that the trial court erred when it considered expert testimony about statements the children made to the social worker under the medical-hearsay exception. The trial court has broad discretion when it comes to the admissibility of evidence. *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997). The appellate court will not reverse the lower court's ruling on either the admissibility of expert testimony or on a

hearsay question unless the appellant can show that the court abused its discretion. *Id.* In order to show abuse of discretion, the appellant must demonstrate that the trial court acted improvidently, thoughtlessly, or without due consideration. *Carew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004). Additionally, the appellate court will not reverse an evidentiary ruling absent a showing of prejudice. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the *truth of the matter asserted.*" Ark. R. Evid. 801(c) (2005) (emphasis added). In this case, Ms. Doan's expert testimony included testimony about statements the children had made to her. Over Meins's objection, the trial court stated that it would allow Ms. Doan to testify about what the children told her regarding their father's disparaging remarks under the medical diagnosis or treatment exception. The court further stated that this portion of her testimony would go towards "the weight of the evidence, not necessarily the truth."

■■ In this instance, the trial judge allowed Ms. Doan's testimony under the medical diagnosis or treatment exception. Rule 803(4) of the Arkansas Rules of Evidence specifically excludes from the hearsay rule those statements given by a declarant "for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The basis for this exception is the patient's strong motivation to be truthful in giving statements for diagnosis and treatment. *Carton v. Mo. Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990). We do not agree that Ms. Doan qualified as a medical expert or that the testimony at issue was admissible pursuant to the medical exception or possessed the same degree of reliability.

■ However, the testimony was generally admissible under Rule 703; we will affirm a trial court when it has reached the right result although it announces the wrong reason. *See Nettleton Sch. Dist. v. Owens*, 329 Ark. 367, 948 S.W.2d 94 (1997); *Al-mobarak v. McCoy*, 84 Ark. App. 152, 137 S.W.3d 440 (2003). According to Rule 703 of the Arkansas Rules of Evidence, an expert may base an opinion on facts or data otherwise inadmissible,

as long as the facts or data are of the type reasonably relied on by experts in that particular field. It is well settled that Rule 703 allows an expert witness to form an opinion based on facts learned from others despite its being hearsay. *Carter v. St. Vincent Infirmary*, 15 Ark. App. 169, 690 S.W.2d 741 (1985); *Ark. State Highway Comm'n v. Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985). In addition, although this rule is not intended to give an expert witness license to merely repeat hearsay for the sake of putting such information before the trial court, "an expert must be allowed to disclose to the trier of fact the basis of facts for his opinion, as otherwise the opinion is left unsupported in midair with little if any means for evaluating its correctness." *Lawhon v. Ayres Corp.*, 67 Ark. App. 66, 992 S.W.2d 162 (1999); *Schell, supra*. In this case, both sides stipulated that Ms. Doan was an expert witness. The children's statements to Ms. Doan about the remarks their father made about their mother and stepfather helped form the basis of her opinion that the animosity between Kevin and Judy caused the children to be stressed and that visitation exchanges should occur on neutral territory.

 Moreover, we note that Judy and her sister both testified, without objection, to disparaging remarks they heard Kevin make in front of the children, and Kevin himself admitted to making certain disparaging remarks. Even when hearsay is erroneously admitted, the appellate court will not reverse if the hearsay evidence is cumulative of other evidence admitted without objection. *See Madden v. Aldrich*, 346 Ark. 405, 585 S.W.3d 342 (2001); *Thompson v. Perkins*, 322 Ark. 720, 911 S.W.2d 582 (1995). In this case the evidence was also cumulative of the testimony of other witnesses.

██ Kevin also argues that the trial court erred when it modified his visitation by eliminating his weekday visits. In this regard, the trial court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or of facts not known to it at the time of the initial order. *Stellpflug v. Stellpflug*, 70 Ark. App 88, 14 S.W. 3d 536 (2000). Visitation is always modifiable; however, courts require more rigid standards for modification than for initial determinations in order to promote stability and continuity for the children and in order to discourage repeated litigation of the same issues. *Hass v. Hass*, 80 Ark. App. 408, 97

S.W.3d 424 (2003). The party seeking a change in the visitation schedule has the burden to demonstrate a material change in circumstances that warrants a change in visitation. *Id.* The best interests of the children are the main considerations. *Id.* There are several factors to take into consideration when determining reasonable visitation, including (1) the wishes of the children; (2) the capacity of the party desiring visitation to supervise and care for the child; (3) problems of transportation and prior conduct in abusing visitation; (4) the work schedule or stability of the parties; and (5) the relationship with siblings or other relatives. *Id.*

In the present case, however, there was ample evidence presented to suggest that a change in circumstances warranted modification of visitation. Ms. Doan and Judy testified that the animosity between Kevin and Judy caused Lindsey and Kaleb a great deal of stress; and Ms. Doan suggested that some type of modification would be in the best interest of the children and that it was necessary to keep the parties on neutral territory during pick up and drop off. In addition, Kevin accumulated two DWI convictions after the divorce and had his drivers' license suspended. Other testimony also established that Kevin had issues with alcohol and that he frightened the children when he was under the influence. The evidence also reflected that Kevin had failed to seek help for his anger and alcohol issues from the court-ordered physician. Kevin also admitted to making disparaging remarks and disobeying the decree by repeatedly walking the children to Judy's car. Based on the evidence, we cannot say that the trial court erred in finding that there had been a change in circumstances and that it would be in the children's best interests to modify Kevin's visitation rights eliminating the daily visits so as to lessen the need for contact between the parties.

Affirmed.

CRABTREE and BAKER, JJ., agree.