2009 Ark. App. 821
**Ronald TADLOCK, Appellant**

v.

**ARKANSAS DEPARTMENT OF
HUMAN SERVICES,
Appellee.**

**No. CA 09–814.**

Court of Appeals of Arkansas.

Dec. 9, 2009.

Deborah R. Sallings, Ark. Public Defender Comm'n, Little Rock, for appellant.

Keith L. Chrestman, Jonesboro, for appellee.

Tabitha B. McNulty, Office of Chief Counsel, for appellee.

JOHN MAUZY PITTMAN, Judge.

┴Ronald Tadlock appeals from an order terminating his parental rights in C.T. (born December 4, 2008). In a related appeal decided today, we affirmed two prior orders from the Garland County Circuit Court, one of which adjudicated C.T. de-

pendent-neglected and the other of which terminated appellant's parental rights in another child, T.T. *See Tadlock v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 841, 372 S.W.3d 403. For the following reasons, we also affirm the termination order in this case.

Approximately sixteen months before C.T. was born, his mother, Michelle Hrdlicka, gave birth to a daughter, T.T., on August 12, 2007. Hrdlicka tested positive for drugs at that time and appellant, the child's father, tested positive for drugs two times in the weeks that followed. On August 16, 2007, DHS obtained emergency custody of T.T. and another of Hrdlicka's children, S.M. The circuit court adjudicated the children dependent-neglected and ordered appellant and Hrdlicka to, among other things, remain clean and sober; to submit to random drug testing; to attend NA/AA meetings and obtain sponsors; to submit to drug assessments and follow recommendations; to attend court hearings; to maintain stable housing and employment; and to maintain a clean, safe, and healthy living environment. The court also adopted a mediation agreement in which appellant promised to attend parenting classes and to attend NA/AA meetings three times a week and obtain a sponsor.

During the following year, DHS provided numerous services to appellant and Hrdlicka, and the couple made progress toward reunification. Appellant tested negative on all drug screens; Hrdlicka completed drug rehabilitation; the couple found suitable housing; and appellant obtained regular employment. As a result, the court permitted the children to have a sixty-day trial visit with appellant and Hrdlicka beginning on October 24, 2008. While the visitation was in progress, C.T. was born on December 4, 2008. On December 22, 2008, the court determined that the trial visit was successful and returned T.T. and S.M. to appellant and Hrdlicka.

As discussed in the related opinion, the children's presence in the household was short-lived. On January 7, 2009, Michelle Hrdlicka tested positive for drugs, causing DHS to file an emergency petition to resume custody of T.T. and S.M., and to file a dependency-neglect petition seeking emergency custody of C.T. The circuit court placed all three children in DHS custody and found probable cause for their removal from the home. DHS subsequently filed a motion to terminate reunification services and to terminate appellant's and Hrdlicka's parental rights to T.T. and S.M. By orders entered March 18, 2009, the circuit court terminated appellant's and Hrdlicka's parental rights to T.T. and S.M., and adjudicated C.T. dependent-neglected. Thereafter, DHS filed a petition to terminate the couple's parental rights to C.T. Among the grounds pled was that their parental rights had been involuntarily terminated as to C.T.'s sibling.

On April 23, 2009, the court held a termination hearing regarding appellant's and Hrdlicka's parental rights to C.T. Both failed to appear. Appellant's attorney informed the court that appellant stated that he was sick in the hospital with pneumonia; however, no medical proof was offered.

At the hearing, the court heard testimony from two of the witnesses who testified in the previous termination hearing regarding T.T. and S.M. DHS social-service aide Tamara Stricklin and CASA worker Ruth Weatherwax essentially echoed their testimony from the prior hearing, which is set out in the related opinion. *Tadlock v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 841, 372 S.W.3d 403. Stricklin added that she was concerned that C.T. appeared "small" when he was removed

from the home and that the mother was watering down the child's formula. A new witness, Patty Briseldine, who was C.T.'s foster mother, testified that one-month-old C.T. weighed seven pounds and was "malnourished" when he came into her care (he weighed six pounds, nine ounces at birth). Briseldine said that C.T. looked like a "preemie" with bulging eyes and hanging skin. She also testified, over Tadlock's hearsay objections, that "everybody" thought that C.T. was a premature baby and that personnel at Children's Hospital said that C.T. was a "high-risk" and "failure-to-thrive" baby and that they were "concerned whether or not he would make it."

During the hearing, appellant's counsel attempted to elicit testimony from Stricklin and Weatherwax regarding his compliance with various aspects of the case plan and court orders. The court did not allow the testimony.

On April 23, 2009, the court entered an order terminating appellant's (and Hrdlicka's) parental rights in C.T. The court incorporated the "entire record" and "all prior testimony" in the case and found that C.T. was adoptable;[1] that there was potential harm in returning C.T. to appellant; and that grounds for termination existed, including that appellant's parental rights were involuntarily terminated as to C.T.'s sibling. Appellant appeals and argues that (1) the termination decision was not supported by sufficient evidence; (2) the court erred in admitting hearsay testimony from witness Patty Briseldine; and (3) the court erred in preventing him from adducing evidence of his previous compliance with the case plan.

### I. Termination decision

■ Our Juvenile Code requires that, before parental rights can be terminated,

DHS must prove by clear and convincing evidence that termination is in the child's best interest and that at least one statutory ground for termination exists. Ark. Code Ann. § 9–27–341(b)(3)(A) & (B) (Supp.2009). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Meriweather v. Ark. Dep't of Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007). When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We review termination-of-parental-rights cases de novo. *Id.*

■ We conclude that the circuit court did not clearly err in terminating appellant's parental rights to C.T. That termination was in C.T.'s best interest is amply demonstrated by the proof supporting the termination of appellant's parental rights to T.T. in the companion case, *Tadlock v. Arkansas Department of Human Services,* 2009 Ark. App. 841, 372 S.W.3d 403. That proof showed that appellant continued to have significant contact with Michelle Hrdlicka after her persistent drug use caused the children to be removed from the home; that appellant exhibited inappropriate and potentially dangerous anger and impulsiveness; and that appellant disobeyed court orders to attend NA/AA meetings regularly and obtain a sponsor. Further, DHS witnesses at the prior hearing testified to their concern that the chil-

---

1. Tadlock's attorney stipulated to the child's    adoptability at the hearing.

dren in appellant's care were not being properly fed. In the present termination hearing, DHS produced evidence from Patty Briseldine (exclusive of hearsay) that C.T. was low weight and malnourished when he came into her care at one month of age. These factors, coupled with the termination of appellant's parental rights in C.T.'s sibling, *see* Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)(*a*)(*4*) (Supp.2009), provide a sufficient basis for the circuit court's termination decision. We therefore affirm the court's termination order.

## II. *Hearsay objection*

■ Patty Briseldine was allowed to testify, over appellant's hearsay objection, that Children's Hospital personnel said that C.T. was a "high-risk" and "failure-to-thrive" baby and that they were concerned about whether C.T. would make it.[2] Appellant argues that the admission of Briseldine's testimony was error. We review a circuit court's evidentiary rulings under an abuse-of-discretion standard. *See Hopkins v. Ark. Dep't of Human Servs.,* 79 Ark.App. 1, 83 S.W.3d 418 (2002).

■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay is generally inadmissible. Ark. R. Evid. 802. However, there are numerous exceptions contained in Rule 803 of the Arkansas Rules of Evidence. Among them is the medical-diagnosis exception, which reads as follows:

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Ark. R. Evid. 803(4). The circuit court applied the Rule 803(4) exception in allowing Briseldine's testimony. We hold that the court abused its discretion in doing so.

■ The basis for the medical-diagnosis hearsay exception is *the patient's* strong motivation to be truthful in giving statements *for the purpose* of diagnosis and treatment. *Flores v. State,* 348 Ark. 28, 69 S.W.3d 864 (2002) (emphasis supplied). The exception does not apply when the statement is not made by the patient, or by someone in a special relationship with him, to a medical-care provider for that purpose. *See Benson v. Shuler Drilling Co.,* 316 Ark. 101, 871 S.W.2d 552 (1994); *Meins v. Meins,* 93 Ark.App. 292, 218 S.W.3d 366 (2005). In the present case, there is no evidence that the statements of the Children's Hospital personnel were made by a patient for purposes of treatment or diagnosis. Briseldine's testimony regarding those statements is therefore hearsay.

■ However, erroneous admission of hearsay is subject to a harmless-error analysis. *See generally Gatlin v. State,* 320 Ark. 120, 895 S.W.2d 526 (1995). In this case, we deem the error in admitting Briseldine's hearsay testimony harmless. The testimony took nothing away from the remaining evidence that very clearly supported termination, particularly the proof adduced in the companion case and Briseldine's nonhearsay testimony about C.T.'s poor condition when he came into her care.

---

2. Appellant also objected to Briseldine's statement that "everybody" thought C.T. was a premature baby. However, the court did not rule on that objection, and we cannot reverse in the absence of a ruling. *Tech. Partners, Inc. v. Regions Bank,* 97 Ark.App. 229, 245 S.W.3d 687 (2006).

**366**

In fact, the hearsay evidence is somewhat cumulative to Briseldine's own observations about C.T.'s low weight and his appearing to be a premature baby. We will not reverse if the hearsay evidence is cumulative of other evidence admitted without objection. *Meins v. Meins, supra.* Accordingly, we decline to reverse on this point.

Appellant also contends that Briseldine's testimony was at odds with C.T.'s medical evaluation, which did not mention low weight or malnutrition. However, C.T. was evaluated at the age of two months, after he had been in Briseldine's care for several weeks. Briseldine's observations concerned C.T. at one month of age, when he first came into her care after being removed from appellant's household. We defer to the circuit court to resolve conflicts in the evidence. *See Jones–Lee v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 160, 316 S.W.3d 261.

### III. *Exclusion of Compliance Evidence*

During the termination hearing, appellant attempted to present evidence that he had complied with the case plan and that he had obtained transportation. The court did not allow the evidence because DHS's petition was based on the termination of parental rights to a sibling rather than appellant's noncompliance with the case plan. Appellant argues that the court's exclusion of his evidence merits reversal. We disagree.

While it might have been the better procedure for the court to admit appellant's evidence, we see no prejudice to appellant in the court's not doing so. *See Howell v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 612, 2009 WL 3028987 (requiring a showing of prejudice for reversal on an evidentiary ruling). The court had already heard appellant's evidence in this regard at the prior termi-

nation hearing, and the court's order in this case states that the court considered and reviewed all prior testimony. Furthermore, appellant has included the prior hearing testimony in his brief in this case, and we have given it due consideration in our de novo review. It does not warrant reversal of the termination order.

Affirmed.

KINARD and BAKER, JJ., agree.