2014 Ark. App. 408

**Robbie L. WARD, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR–13–1027.**

Court of Appeals of Arkansas.

June 18, 2014.

Charles E. Ellis, Blytheville, for appellant.

Dustin McDaniel, Att'y Gen., by Jake H. Jones, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge.

On August 15, 2013, a Mississippi County jury found appellant Robbie Ward guilty of raping a two-year-old girl (TG) and sexual indecency with a five-year-old boy (HB). Ward was sentenced to a total of thirty-six years' imprisonment in the Arkansas Department of Correction. He now appeals arguing that there was insufficient evidence to support his convictions; that all testimony from HB should have been excluded; and that certain statements made by a social worker who testified at trial were inadmissible hearsay. The State responds that the evidence was more than sufficient to support the convictions and that both questionable evidentiary rulings were harmless error, if error at all. We agree and affirm the convictions.

First, in consideration of whether there was substantial evidence to support the rape and sexual-indecency convictions, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Bea-*

*ver v. State*, 2014 Ark. App. 188, at 1, 2014 WL 1092386. We will affirm a conviction when there is substantial evidence to support it, and substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.*

A person commits rape if he engages in deviate sexual activity with another person who is less than fourteen years of age. Ark.Code Ann. § 5–14–103(a)(3)(A) (Supp.2011). "Deviate sexual activity" includes any act of sexual gratification involving the penetration, however slight, of the mouth of a person, by the penis of another person or the labia majora of a person by any body member of another person. Ark.Code Ann. § 5–14–101(1)(A), (B) (Supp.2011). A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanation of incriminating conduct. *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729.

The evidence here shows that Mark Griffin, the father of TG, lived with his fiancee, Christie Owens, and her son, HB. Griffin testified on November 15, 2012, he and Owens went to Walmart to cash their paychecks and left their children with Owens's uncle, Donnie Adamson. It is unclear from the record when Adamson left and Ward (apparently a family acquaintance) arrived at the home; but when Griffin and Owens returned, they could locate neither Adamson nor the children. Griffin testified that on investigation, they discovered that the door to his and Owens's bedroom was locked but that he was able to push it open. Griffin testified that when he entered the room, he saw the children essentially naked and Ward "at the end of the bed with his [penis] in his

hand." HB testified that Ward "touched [TG's] privates" with his hands.

TG and HG were taken to the hospital and tested for evidence of rape. Heather Farrell, an expert in forensic serology from the Arkansas State Crime Laboratory (ASCL) testified that the test revealed the presence of semen on an oral swab taken from TG. Morgan Nixon, a DNA expert from the ASCL testified that a partial DNA profile consistent with Ward was found on a vaginal swab taken from TG.

Owens testified that she entered the room at the same time as Griffin and grabbed the kids. Owens asked HB if Ward had touched him and TG, and HB replied "yes," adding that "[Ward] peed on us." HB told the same story to Barbara Weaver, a case worker with the Arkansas Department of Human Services (DHS), who testified about HB's account of events at trial. Weaver and HB had a counseling relationship that predated the criminal activity due to certain developmental delays from which HB suffered. Finally, HB testified at trial describing the same events that were presented by Owens and Weaver in their testimony.

According to Ward, he was intoxicated at the time of the incident and believed he was at home urinating in his bathroom. He further explained that it was possible that the DNA semen was found in TG's mouth and vagina because he had engaged in sexual intercourse with an unidentified woman earlier in the day and had failed to wash his hand afterward. He suggested that the semen found inside TG resulted from him giving her a drink and changing her diaper earlier in the day. Ward also noted that Owens may have transferred the DNA from the house to the child when she picked the child up from the bed. In the end, Ward testified that Griffin and Owens were "making it up" and that Ow-

ens had once accused him of "setting her great uncle up for marijuana and some crystal meth[.]"

However, viewing the evidence in the light most favorable to the State, we are more than satisfied that the facts established at trial, coupled with Ward's improbable explanation of the events relating to how his semen entered TG's body, support the rape conviction, and we affirm.

Ward also challenges the sufficiency of the evidence to support his sexual-indecency conviction, based on the jury's conclusion that he exposed himself to a five-year-old boy for the purpose of sexual gratification. A person commits sexual indecency with a child if, with the purpose to arouse or gratify a sexual desire of himself, the person purposely exposes his sex organs to another person who is less than fifteen years of age. Ark.Code Ann. § 5–14–110(a)(2)(A) (Supp.2011). Further, it is not necessary that the State provide direct proof that an act is done for sexual gratification if it can be inferred from the circumstances. *Newton v. State*, 2012 Ark. App. 91, at 3, 2012 WL 206967.

In this case, both Griffin and Owens testified that they saw Ward in their bedroom with HB and TG and that Ward's penis was exposed at the time. HB testified that Ward had his pants and underwear off and that he "peed" in HB's hand. Also, the children were undressed and his semen and partial DNA were found in oral and vaginal swabs taken from TG. There is ample evidence for the jury to reasonably infer that Ward exposed himself to the children with the purpose to arouse or gratify his sexual desire. We affirm on this point as well.

In his third point on appeal, Ward complains that the trial court erred in its assessment of HB's competency to testify at trial. The question of competen-

cy of a witness is a matter within the sound discretion of the trial court. In the absence of clear abuse of discretion, we will not reverse on appeal. *Warner v. State*, 93 Ark.App. 233, 238, 218 S.W.3d 330, 333 (2005). Any witness is presumed competent unless proved otherwise. Ark. R. Evid. 601 (2014). The party alleging that a witness is incompetent has the burden of persuasion. *Warner*, 93 Ark. App. at 238, 218 S.W.3d at 333. The issue of the competency of a witness is one in which the trial judge's evaluation is particularly important due to the opportunity he is afforded to observe the witness and the testimony. *Id.*, 218 S.W.3d at 333. A witness's competency may be established by the following criteria: 1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or 2) an understanding of the consequences of false swearing; or 3) the ability to receive accurate impression and retain them to the extent that the capacity exists to transmit to the fact finder a reasonable statement of what was seen, felt, or heard. *Id.* at 238–39, 218 S.W.3d at 333. Further, as long as the record supports a trial judge's finding of a moral awareness of the obligation to tell the truth and an ability to observe, remember, and relate facts, we will not hold that there has been a manifest error or abuse of discretion in allowing the testimony. *Id.* at 239, 218 S.W.3d at 333. Finally, in determining the competency of a child witness, the trial court will examine the child's testimony in its entirety and will not rely solely on the preliminary questioning. *Id.*, 218 S.W.3d at 333.

Here, the facts show that even the State admitted that it "struggled with the competency issue" and at one point stipulated that HB was not competent to testify. However, the trial court refused the stipulation, noting the absence of evidence showing that HB was not competent at that preliminary point, but reserved the issue for further consideration, as "it might come up again." However, we agree with Ward that HB's testimony at trial is remarkably incoherent. When asked "what is a lie" HB responded "*because him think—I tell you that.*" To the query "can you tell me what a lie is" HB responded "*not again.*" When asked "what color is this shirt here" HB responded "*white (moments later) purple.*" HB was asked what happens to someone if he or she does not tell the truth, and he answered "*because.*" When asked "what happens to YOU if you do not tell the truth," he replied "*my mom kicked Robbie in the face.*" Later, HB was more pointedly asked "what happens when you tell a lie, is that a good thing or a bad one" to which HB responded "*bad.*" However, to the follow-up question "why is it bad" HB responded "*because him there is.*" After being asked "do you get in trouble when you tell the truth," HB responded "*no.*" But, when he was asked "do you get in trouble when you tell a lie," HB said, "*nope go over there.*" He also stated that Ward "touched Tater Bug's privates," but could not identify what body parts "privates" were. Additionally, he was asked where he was when the incident happened and replied "because." Then, to the follow up "where were you," HB said, "*because, momma, you are crazy.*"

While we are mindful that there are some children of HB's age who would meet all requisites for competency as a witness, we agree with Ward that in this case it was error to allow HB to testify. However, reversal is unwarranted because all of the facts relayed by HB were also admitted into evidence through his mother's account of events and her testimony as to how HB described the incident to her, which is not challenged on appeal. Therefore, although it was error

to allow the testimony of HB, the evidentiary error is subject to a harmless-error analysis. It is commonplace that evidentiary error is harmless if the same or similar evidence is otherwise introduced. *Elliott v. State,* 2010 Ark. App. 809, at 8, 379 S.W.3d 101, 106. Here, because the same evidence offered by HB was also presented by Owens, we find the error in allowing the testimony to be harmless.

■■■■■ The final point of error raised by Ward also has merit. At the pretrial hearing, the deputy prosecutor, Curtis Walker, explained that it was the intention of the State to introduce statements made by HB to Weaver, his DHS therapist. Ward objected claiming that any statement made by HB to Weaver was hearsay. However, the State maintained that the statements were admissible under Arkansas Rules of Evidence Rule 803(4) as statements made for purposes of medical diagnosis or treatment. Although Weaver described herself as a "mental health therapist," based on her Master's degree in social work and twenty-five years' experience, she was neither a doctor nor a nurse. And, according to our established precedent, a social worker cannot testify pursuant to the medical exception because a social worker does not qualify as a medical expert, and the resulting testimony is not admissible pursuant to the medical exception as it does not possess the necessary degree of reliability. *Meins v. Meins,* 93 Ark.App. 292, 300–02, 218 S.W.3d 366, 370–71 (2005). This precedent is compelling in its application to Weaver's testimony in the case at bar. Consequently, the trial court should not have allowed the testimony of Weaver under the medical-diagnosis exception to the hearsay rule. However, although the trial court erred in allowing the testimony, the error was harmless. Weaver's testimony was cumulative to that of Owens, which was not

challenged on appeal. Owens testified that HB told her that Ward had his penis out, touched his sister, and "peed on [them]." Therefore, although the court violated our *Meins* directive, we hold that the error was harmless because the erroneously admitted evidence was cumulative, and we affirm both convictions.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.