2015 Ark. App. 568

**Adrian WOOTEN, Appellant**

v.

**STATE of Arkansas, Appellee**

**No. CR-15-225**

Court of Appeals of Arkansas, DIVISION II.

Opinion Delivered October 21, 2015

James Law Firm, by: William O. "Bill", James, Jr., Little Rock, for appellant.

Leslie Rutledge, Att'y Gen., Little Rock, by: Ashley Driver Younger, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Chief Judge

Adrian Wooten was convicted of rape and residential burglary on November 19, 2014, in the Howard County Circuit Court. On appeal, he contends that the trial court erred by allowing the eighty-nine-year-old victim to testify, arguing that she was unable to pass the standard for competency. We affirm.

Wooten was charged by information filed September 11, 2013, alleging that he had committed rape in violation of Arkansas Code Annotated section 5–14–103(a)(1) (Repl. 2013), and aggravated residential burglary in violation of Arkansas Code Annotated section 5–39–204(a)(1), (2) (Repl. 2013). Wooten filed a motion challenging the competency of a witness, M.H., and a hearing was held outside the presence of a jury.

Defense counsel began by asking M.H. questions regarding the night of August 9, 2013. The State objected, complaining that the hearing was not a fishing expedition, but to determine her competency to testify. The trial court stated that it had to "find to the extent that the capacity exists to transmit to the fact-finder a reasonable statement of what was seen, felt, or heard. So I need a basis for that. Overruled." The trial court later clarified, stating that it did not need all the details, but

enough to know "whether or not she understands her ability to take the oath and can testify." M.H. answered questions regarding her statement to police on the night of the alleged incident, admitting that she might have said to the police that a white man had attacked her. She explained that the man's voice sounded like a white man's. She said that he threw a pillow over her head, she could not breathe, and she was fighting for her life. She said that the attacker said, "Let's take a walk," and, "Let's go to the pond." She explained that she prayed all the way there that he would not throw her in the pond because she could not swim. She said that she could not see the man's face and admitted not knowing whether had she told the police that the attacker was white.

Due to the State's objection, the trial court admonished defense counsel to "[g]et to the heart of the competency issue." Defense counsel said, "This is it, Your Honor[.]" The trial court responded that defense counsel was making a factual argument, but the question was whether M.H. had the capacity to testify. Defense counsel then asked M.H. if she could remember what had happened on the night of August 9. She answered that it was the night [her attacker] said,

'Let's walk down to the pond.' So we did. And then at the pond he raped me, and I prayed all the way down to the pond ... Lord, please don't let him kill me. Don't let him throw me in the water because I can't swim. I just kept on praying that. And I think I'm going to start crying.

She later said that after the rape, officers came, and the attacker left, running toward Mineral Springs. She was asked if she could remember whether it was a white or a black man, and she said it was dark and she could not see him. She said his voice sounded like a white man's. She did not know why she told police that it was a white man who had raped her. When defense counsel asked if she had been confused, she answered,

Very confused of why, whoever it was, why would he come and pick me? Uh-huh. So that's what I was telling him. I said why would he do that to me? I haven't done nothing to him. So, if I had said a white man, I couldn't see that man, not fully. I don't know. I'm confused. And I'm really tired. I'm really, really tired. And I don't mean to get anybody in trouble that didn't do it, but the person that did it, I want him to be punished, because he just kind of turned my life around, whoever did it. Makylah, did I tell you a white man?

The trial court determined that nothing had been shown that M.H. was not competent to testify.

Thereafter, the jury trial was held, and M.H. testified in more detail regarding the attack. She explained that she had been in bed with her great-granddaughter when they were attacked by two men, and she fought her attacker while he covered her face with a pillow. She said the attacker demanded money. She said that he had come through a window. M.H. said that when her great-granddaughter went to get help from a neighbor, her attacker took her to the pond, where he raped her and ran away. She testified that she walked back to her neighbor's house and saw policemen swarming the area. She also testified that her attacker was a black man, but she said that was all she could remember to identify him. After prompting, she remembered that she had been taken to the hospital after the incident occurred.

After the remainder of the witnesses testified, the jury found Wooten guilty of rape and aggravated residential burglary. He was sentenced to sixty years' imprisonment for the rape and forty years' impris-

onment for the burglary, to be served consecutively. Wooten filed a motion for new trial on November 21, 2014. The trial court did not rule, and the motion was deemed denied on the thirtieth day after the motion was filed. Ark. R. Crim. P. 33.3 (2015). This appeal timely followed.

■■ Wooten's sole argument is that the trial court erred in finding M.H. competent to testify.

The question of competency of a witness is a matter within the sound discretion of the trial court. In the absence of clear abuse of discretion, we will not reverse on appeal. *Warner v. State*, 93 Ark. App. 233, 238, 218 S.W.3d 330, 333 (2005). Any witness is presumed competent unless proved otherwise. Ark. R. Evid. 601 (2014). The party alleging that a witness is incompetent has the burden of persuasion. *Warner*, 93 Ark. App. at 238, 218 S.W.3d at 333. The issue of the competency of a witness is one in which the trial judge's evaluation is particularly important due to the opportunity he is afforded to observe the witness and the testimony. *Id.*, 218 S.W.3d at 333. A witness's competency may be established by the following criteria: 1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or 2) an understanding of the consequences of false swearing; or 3) the ability to receive accurate impression and retain them to the extent that the capacity exists to transmit to the fact finder a reasonable statement of what was seen, felt, or heard. *Id.* at 238–39, 218 S.W.3d at 333. Further, as long as the record supports a trial judge's finding of a moral awareness of the obligation to tell the truth and an ability to observe, remember, and relate facts, we will not hold that there has been a manifest error or abuse of discretion in allowing the testimony. *Id.* at 239, 218 S.W.3d at 333.

*Ward v. State*, 2014 Ark. App. 408, at 4–5, 439 S.W.3d 56, 59–60 (2014).

■■ Wooten contends that, under Arkansas Rule of Evidence 601 (2014), M.H. showed a lack of ability to remember the incident and transmit those recollections to the jury. He contends that when she qualified her answers with "thinks so," and "thinks," and "might," and when she claimed that she was confused, it was obvious that "a great deal of [M.H.'s] testimony was guesses[.]" He argues that her inability to remember what she told police on the night of the attack and her confession that she was "really, really tired," demonstrated her inability to retain the memories of the events and relay them to the jury. Thus, Wooten claims that M.H. should not have been allowed to testify.

We hold that the trial court did not abuse its discretion by finding M.H. competent to testify. M.H. demonstrated her ability to receive and retain accurate impressions and to relay them to the judge and the jury. At the pretrial hearing, she testified to (1) speaking to the police; (2) the events and location of the rape; (3) having a pillow placed over her face; (4) her pleas that her attacker not throw her in the pond because she could not swim; (5) the direction in which her attacker ran after raping her; and (6) her fight with her attacker before the rape. At trial, M.H. testified as to (1) how her attacker entered her home; (2) her attacker's demand for money; (3) a description of her property and the pond's location in relation to her home; and (4) going to the hospital after her attack. M.H.'s struggle to remember whether her attacker was black or white, considering the evidence that it was dark, there had been a struggle, and she had been raped, is not dispositive of the issue of her competency. Accordingly, the trial

court did not abuse its discretion in finding M.H. competent to testify because she displayed the ability to relay the events of her attack and describe what she saw, felt, and heard.

Affirmed.

Whiteaker and Hoofman, JJ., agree.