

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-639

| | |
|---|---|
| SHANE LEE WILLS<br><br>APPELLANT<br><br>V.<br><br>THERESA WILLS AND MINOR CHILD<br>APPELLEES | **Opinion Delivered** March 16, 2016<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. DR-04-554]<br><br>HONORABLE JOANNA TAYLOR, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Shane Wills appeals the Washington County Circuit Court's order denying his request for a change of custody of his son and granting appellee Theresa Wills's request for a change of visitation. We affirm.

Shane Wills has a biological son whose biological mother, Cherokee Shea, has been largely absent from his life. By all accounts, Theresa Wills, whom Shane married after his divorce from Cherokee Shea, has been the child's mother figure since he was an infant. In 2011, the court allowed Theresa to intervene in Shane and Cherokee's custody case and found that Theresa stood in loco parentis to the child. The order stated that Shane was the custodial parent but that Theresa should be granted visitation. The court then entered an agreed order stating Theresa would receive one-half of the child-support payments that Cherokee Shea paid to Shane Wills. The following year, Shane and Theresa were divorced. While there was conflicting testimony, it appears that their divorce was not amicable. On

March 25, 2014, Shane filed a motion to terminate Theresa's visitation rights. He argued that his acrimonious divorce from Theresa constituted a change in circumstances warranting modification of visitation. After a hearing on the issue, the court found that there were no changed circumstances warranting a change of custody but that circumstances had changed enough to warrant a modification of visitation. The court ordered Shane and Theresa to have equal visitation in a week-on, week-off format. The order also found Shane in contempt for failing to give Theresa her share of the child-support payments he had received. He was given sixty days to pay Theresa $5,040.82 in back child support. Shane filed a timely notice of appeal.

In reviewing domestic-relations cases, appellate courts consider the evidence de novo. *Brown v. Brown*, 2012 Ark. 89, at 6–7, 387 S.W.3d 159, 163. We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.*, 387 S.W.3d at 163. When our determination of whether the circuit court's findings are clearly erroneous turns on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Baber v. Baber*, 2011 Ark. 40, at 9–10, 378 S.W.3d 699, 705. A circuit court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not known to it at the time of the initial order. *Martin v. Scharbor*, 95 Ark. App. 52, 233 S.W.3d 689 (2006). Although visitation is always modifiable, to promote stability and continuity for the children and to discourage repeated litigation of the same issues, courts require more rigid standards for modification than for initial determinations. *Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005). Thus, the party

seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants such a change. *Baber*, 2011 Ark. 40, at 9–10, 378 S.W.3d at 705.

The primary consideration regarding visitation is the best interest of the child. *Meins*, 93 Ark. App. 292, 218 S.W.3d 366. Important factors the court considers in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.*, 218 S.W.3d 366. Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.*, 218 S.W.3d 366.

The Arkansas Supreme Court has repeatedly discussed the concept of in loco parentis:

> In *Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991), we cited Black's Law Dictionary (5th ed. 1979) defining "*in loco parentis*" as "in place of a parent; instead of a parent; charged factitiously with a parent's rights, duties, and responsibilities." In *Moon Distributors v. White*, 245 Ark. 627, 434 S.W.2d 56 (1968), we permitted a wrongful-death award to a decedent's stepdaughter to whom the decedent stood *in loco parentis*, noting that the stepdaughter lived in the home with her stepmother "as mother and daughter." Finally, this court has treated grandparents who stood *in loco parentis* differently from grandparents who did not. *See Johnson v. Tompkins*, 341 Ark. 949, 20 S.W.3d 385 (2000). In *Johnson*, we held that the grandparents had no right to present evidence on whether adoption would be in their grandchild's best interest. *Id.* We distinguished our decisions in *Quarles v. French*, 272 Ark. 51, 611 S.W.2d 757 (1981), and *Cox v. Stayton*, 273 Ark. 298, 619 S.W.2d 617 (1981), in which we held that grandparents had standing to intervene in adoption proceedings involving their grandchildren, because the grandparents in those cases stood *in loco parentis* to their grandchildren. We hold that a court may award visitation to a stepparent who stands *in loco parentis* to a minor child when it determines that it is in the best interest of the child.

*Bethany v. Jones*, 2011 Ark. 67, at 10, 378 S.W.3d 731, 737 (quoting *Robinson v. Ford-Robinson*, 362 Ark. 232, 239–40, 208 S.W.3d 140, 144 (2005)).

Shane argues on appeal that the trial court violated his constitutional right to direct the control and upbringing of his child when it refused to terminate Theresa's visitation rights. It is fundamental that the Due Process Clause of the Fourteenth Amendment protects the rights of parents to direct and govern the care, custody, and control of their children. *Bethany*, 2011 Ark. 67, at 8, 378 S.W.3d at 736 (citing *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion) (declaring Washington State's grandparent-visitation act unconstitutional as applied) and *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002) (holding that Arkansas's grandparent-visitation statute was unconstitutional as applied where it violated a mother's fundamental liberty interest under the due-process clause to parent her child)). Shane contends that allowing an in loco parentis stepparent to exercise visitation over the objections of the natural parent violates the natural parent's constitutional right to direct the care and upbringing of his child. Shane relies heavily on *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000), and *Foust v. Montez-Torres*, 2015 Ark. 66.  He argues that both cases require that a biological parent's choices for his child must trump the interest of a nonparent, meaning that he should be allowed to terminate Theresa's visitation rights.

However, we cannot rule on the merits of Shane's constitutional argument[1] because he failed to obtain a ruling on that issue from the circuit court. While he raised the issue below, the circuit court's order does not mention it. It is the obligation of an appellant to obtain a ruling from the trial court in order to preserve an issue for appellate review. *McCraney v. State*, 2010 Ark. 96, at 7, 360 S.W.3d 144, 149. Failure to obtain a ruling precludes

---

[1]The Arkansas Supreme Court has previously addressed the same issue in *Robinson v. Ford-Robinson*, 362 Ark. 232, 208 S.W.3d 140 (2005), and *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731, and held that a circuit court may award visitation to a stepparent standing in loco parentis over the natural parent's objection.

our review of that argument on appeal. *Wilson v. Union Pac. R.R. Co.*, 2011 Ark. App. 508, at 6 (citing *Bunn Builders, Inc. v. Womack*, 2011 Ark. 231 (holding that the failure to obtain a ruling at the trial court level precludes the review of an issue on appeal)). Thus, we will not consider appellant's constitutional challenge.

To the extent that Shane attempts in his brief to challenge the circuit court's finding of changed circumstances,[2] he has failed to provide persuasive authority or argument to support his position. In *Stilley v. James*, 347 Ark. 74, 79, 60 S.W.3d 410, 414 (2001), the Arkansas Supreme Court explained, "We have stated on many occasions that we will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument, and it is otherwise not apparent without further research that the argument is well taken." Shane cites no law in his brief relevant to changed circumstances and makes no persuasive argument as to why the circuit court's changed-circumstances finding should be reversed.

Affirmed.
HOOFMAN and BROWN, JJ., agree.

*Osborne Law Firm*, by: *Ken Osborne*, for appellant.
*Law Offices of Steven H. Kay and Associates*, by: *Steven H. Kay*, for appellee.

---

[2]While Shane's brief contains numerous factual arguments presenting Theresa in a bad light, he repeatedly argues that these facts demonstrate why her in loco parentis status should not trump his own right to direct the care and upbringing of his child. He addresses the issue of changed circumstances only in a single conclusory sentence at the end of his brief. In *Nucor Steel-Arkansas v. Arkansas Pollution Control & Ecology Commission*, 2015 Ark. App. 703, at 15, we addressed a very similar situation and held that a conclusory sentence is insufficient to raise an issue for appellant review. A finding or conclusion by a lower tribunal, if not attacked on appeal, must stand as a basis for affirmance. *See generally Sheppard v. Ark. Alcoholic Bev. Control Bd.*, 2014 Ark. App. 604, 447 S.W.3d 614; *Camp v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999).