Cite as 2023 Ark. App. 38

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-67

| | | |
|---|---|---|
| PERRY MCGOWAN, JR.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | | Opinion Delivered February 8, 2023<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, OSCEOLA DISTRICT<br>[NO. 47OCR-19-160]<br><br>HONORABLE DAN RITCHEY, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Following a three-day jury trial in the Mississippi County Circuit Court, Perry McGowan, Jr., was convicted of murder in the second degree with a firearms enhancement and was sentenced to a total of sixty-five years' imprisonment. On appeal, McGowan argues that the circuit court erred in denying his motion to suppress the statements he made in the custodial interview and that the circuit court erred in admitting the witness statements made by Kecia McGowan. We affirm.

Testimony at the suppression hearing and at trial established that in the early morning hours of May 25, 2019, Tyangus Mitchell, also known as Ty, was shot twice outside of Frank's Place, a pool hall in Osceola. He died of his wounds in the hospital a few hours later. Three 9mm shell casings were collected as evidence from the crime scene, and two 9mm bullets were recovered from Mitchell's body.

Later that same day, McGowan's cousin, Kecia McGowan, gave a recorded statement to Osceola Police Detective Ronnie Williams concerning the murder. Kecia's friend, Stacy Ware, drove her to meet with police because Kecia did not have a car. Ware was in the room when Kecia gave her statement. Kecia told Williams that, on the night of the murder, her cousin, Frank Harris, opened up his pool hall, Frank's Place, for business. Kecia said that Frank's older brother, Deshedrick Jones, also known as Cedrick, was there and asked a young man to move his car so Cedrick would not hit it when he was leaving. Kecia stated that Ty argued with Cedrick, asserting that the young man did not have to move the car. Kecia said that Ty then argued with Frank and slapped him. Kecia said she and other members of the party broke them up and urged them to go outside the pool hall if they were going to fight. She stated that Ty and Frank went outside and continued to fight.

Kecia explained that, during this time, McGowan, who was at the party, left and "went somewhere." Kecia said she again urged Ty to stop fighting and said they should go back inside "and shoot pool or whatever." She said that Ty agreed and was about to apologize to Frank. However, before Ty could apologize, McGowan "came out of nowhere and start[ed] shooting." Kecia told Williams that everyone began running, but Ty fell. She said she called out for him, and he responded, "Kecia, help." That is when she saw blood and realized Ty had been shot. She said that Cedrick took off his shirt and applied pressure to Ty's wounds in an attempt to save his life, and an ambulance was called. Kecia told Williams that McGowan "probably had the gun on him and we didn't know it" and that he probably went back to his car after the shooting.

At that point in the interview, Williams asked where Frank was at the moment. Ware, speaking for the first time, offered that he was "probably in Blytheville." When Williams asked for Frank's phone number, Ware provided it and offered that Frank had Kecia's phone. Williams then asked, "So [McGowan] was the shooter?" Kecia responded, "Yep[.]" Based on Kecia's statement that McGowan was the shooter, a warrant was issued for McGowan's arrest.

McGowan gave a recorded statement to Williams on July 18, 2019. Williams read McGowan his rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and McGowan signed a form stating that he understood those rights and agreed to talk to Williams. Williams told McGowan he was questioning him about a murder that took place in Osceola in May of that year. McGowan initially denied any involvement, before telling Williams that he "just took off running" after he heard the shots.

Williams asked McGowan not to lie to him, telling him that he wanted to be able to go to the prosecutor "and tell her you came in here of your own free will and talked to me." McGowan responded, "I ain't even got my free phone call or nothing." Williams told him, "I can get you a phone call," and again encouraged him to tell the "truth" so Williams could tell the prosecutor that McGowan "[did] the right thing."

McGowan then asked, "Any way I can get a cigarette break or something?" Williams replied that they had to get through the interview first. As Williams continued to encourage him to tell him about the murder, McGowan became visibly upset. After Williams attempted to console him and told him it was just between the two of them, he said he would go to the

3

prosecutor and "see if she'll come talk to you." Williams told McGowan to take his time. McGowan again said he needed a cigarette but that he would tell Williams about the incident.

He then told Williams that his cousin, Frank, came to him inside the pool hall "several different times" because "they [were] messing with Frank." McGowan said he saw people fighting Frank but that Frank should not be fighting because he had cancer. McGowan said he heard shots, so "[he] just got to shooting and [he] ran." McGowan told Williams, "I remember shooting, but I [do not] remember shooting nobody." He said he only shot one time, and "I [was not] aiming at nobody." McGowan said his friend gave him the gun, and he gave it back after the shooting. The gun used was a 9mm.

Near the end of the interview, Williams asked McGowan to write down what he remembered of the incident. McGowan asked, "Do you think I can get a cigarette?" Williams told McGowan, "We'll get to that point once we get through this point right here." Left alone in the interview room, McGowan wrote, "I just heard my cousin in distress and I heard shooting. I shot [one] time and got to running. I blacked out. I didn't mean for nobody to get hurt. If someone did[,] I apologize to [their] family and my family. Let them know I love them and [am going to] miss them. Always [and] forever."

McGowan was subsequently charged in the Mississippi County Circuit Court as a habitual offender with one count of first-degree murder and one count of felon in possession of a firearm. On October 21, 2020, McGowan moved to suppress his custodial statement. He argued that his statement should be suppressed because his requests for a cigarette were

4

an invocation of his right to remain silent that was not honored by Williams, and that denying him a cigarette until the interview was finished negated his right to terminate the interview. The State responded, and the circuit court held a hearing on the motion on October 21, 2020.

At the hearing, McGowan's *Miranda*-rights waiver, videos of his interviews, and the statement he wrote were introduced for the circuit court's consideration. The video of McGowan's interview with Williams was played for the circuit court, after which Williams testified about his interactions with McGowan during the interview. The circuit court denied McGowan's motion to suppress his statement. The circuit court based its ruling on Williams's testimony and "primarily upon the court's review of the video."

The circuit court ruled that McGowan's requests "did not rise anywhere near the level of an unequivocal and unambiguous request to stop the interview or to seek the assistance of counsel." The circuit court concluded its ruling by finding that it did not consider any of Williams's comments in the interview to be contradictory or invalidating with respect to the *Miranda* rights that McGowan had previously been provided.

McGowan retained new counsel after the hearing on the motion to suppress his statement. On July 27, 2021, McGowan moved to exclude Kecia's statement, and he filed a second motion to suppress his statement the next day. With regard to Kecia's statement, McGowan claimed that it was inadmissible because she was mentally disabled and that Ware, "acting as an agent of the police[,]" "prompted" her during the interview and "assisted" her in answering questions. He also argued that, for these reasons, Kecia should not be allowed

5

to testify at trial. With regard to the motion to suppress his custodial statement, McGowan argued that he was denied his right to counsel when he asked whether he was entitled to a phone call, and Williams did not stop the interview. After the State responded, the circuit court held a hearing on the motions on September 29, 2021.

Because the motion to suppress McGowan's statement had been addressed and ruled upon at a previous hearing, defense counsel did not present any additional testimony or argument as to that motion. Instead, the hearing focused on McGowan's motion to exclude Kecia's statement. Kecia testified that she graduated from Osceola High School in 1995. She testified that she knew what an oath was, had sworn to tell the truth, and understood she "could get in trouble" for not telling the truth. However, she testified that when she gave her statement to Williams, she had not been placed under oath. The video of Kecia's interview with Williams was played for the circuit court and introduced at the hearing as State's exhibit 1. During her testimony, Kecia told the circuit court what she remembered of the murder that had occurred over two years prior. Her testimony was similar to the statement she had given to Williams.

At the conclusion of the hearing, the circuit court denied McGowan's motion concerning Kecia's testimony, stating, "I [did not] hear any evidence today of incompetency." The circuit court found that most of Kecia's testimony at the hearing was consistent with the statement she gave to Williams. The circuit court also ruled that Ware's presence at the interview with Williams did not "contaminat[e]" Kecia's statement. The court noted that

Ware's contribution to the statement came only after Kecia had identified McGowan as the shooter, and Ware's statement was "primarily" about Frank.

At trial, McGowan's recorded and written statements, along with his *Miranda*-rights waiver, were introduced into evidence during Williams's testimony, and the recording of the interview was played for the jury. Kecia was called to testify at trial, both by the State and by McGowan. After her statement was played for the jury, Kecia testified to Ware's involvement in the interview, much as she had during the suppression hearing. Kecia stated that she did not discuss her statement with Ware before the interview with Williams. She testified that Ware did not speak up during the interview with Williams until after she had identified McGowan as the shooter. Kecia also testified to the circumstances of Ty's murder. Her testimony was mostly consistent with both the statement she gave Williams and her testimony from the hearing.

McGowan was convicted of second-degree murder with an enhancement for using a firearm. He was sentenced to an aggregate term of sixty-five years in prison. This appeal followed.

McGowan's first point on appeal is that the circuit court should have suppressed his custodial statement to Williams. In reviewing the circuit court's denial of a motion to suppress evidence, we make an independent examination based on the totality of the circumstances and reverse only if the decision is clearly against the preponderance of the evidence. *Stutte v. State*, 2014 Ark. App. 139, 432 S.W.3d 661.

If a suspect "indicates in any manner . . . that he wishes to consult with an attorney [or] . . . that he does not wish to be interrogated, the police may not question him." *Miranda*, 384 U.S. at 444–45; *see also* Arkansas Rule of Criminal Procedure 4.5 (2021). A defendant may cut off questioning at any time by "unambiguously" invoking his right to counsel or his right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). "There is no distinction between the right to counsel and the right to remain silent with respect to the manner in which they are affected." *Fritts v. State*, 2013 Ark. 505, at 9, 431 S.W.3d 227, 232.

Our appellate courts have interpreted Arkansas Rule of Criminal Procedure 4.5 to require that the invocation of the right to remain silent and the right to counsel be unequivocal and unambiguous. *See Fritts*, 2013 Ark. 505, at 10, 431 S.W.3d at 233; *Gilbert v. State*, 88 Ark. App. 296, 301–02, 198 S.W.3d 561, 565 (2004). Unless a suspect says that he wants to remain silent or does not want to talk with the police, there is no unequivocal invocation of his *Miranda* right. *E.g.*, *Fritts*, 2013 Ark. 505 at 10, 431 S.W.3d at 233. An equivocal request does not obligate police to cease questioning. *E.g.*, *Gilbert*, 88 Ark. App. at 301–02, 198 S.W.3d at 565. Here, it is undisputed that McGowan voluntarily waived his *Miranda* rights before Williams began questioning him. He claims that his requests to smoke a cigarette were "a very bright line that [he] did not want to talk and was wanting to remain silent and not make any statements at that time." His argument is unpersuasive.

Given the totality of the circumstances, the circuit court's ruling that McGowan's requests "did not rise anywhere near the level of an unequivocal and unambiguous request to stop the interview or to seek the assistance of counsel" was not clearly against the

preponderance of the evidence. The circuit court's denial of the motions to suppress is affirmed.

McGowan's second point is that the circuit court erred by denying his motion to exclude Kecia's pretrial statement to Williams in which she identified McGowan as the shooter. McGowan first argues that Kecia was coerced by Ware and, second, argues that she is mentally incompetent. His argument that Ware coerced Kecia is without merit, and he fails to cite a case on point to support this claim. We will not reverse when a point on appeal is unsupported by convincing argument or sufficient citation to legal authority. *Smith v. State*, 2022 Ark. App. 422, 654 S.W.3d 701.

Alternatively, McGowan argues that the circuit court erred by not excluding Kecia's out-of-court statement to Williams because she was incompetent due to diminished mental capacity. The State argues that McGowan's application of the rules of evidence governing the competency of in-court witnesses to Kecia's unsworn out-of-court statement is misplaced and maintains that because Kecia's statement to Williams was admittedly not made under oath, the law governing the competency of a witness to testify is inapplicable to her out-of-court statement to Williams. Regardless, the question of a witness's competency is a matter within the sound discretion of the circuit court, and we will reverse only upon a showing of a clear abuse of discretion. *Wooten v. State*, 2015 Ark. App. 568, at 4, 494 S.W.3d 434, 437. The party alleging that a witness is incompetent has the burden of persuasion. *Id.* McGowan has not done so here, and we hold that the circuit court did not abuse its discretion in admitting Kecia's statement. Accordingly, we affirm.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Jones Law Firm*, by: *F. Parker Jones III*, *Vicram Rajgiri*, and *Christopher Tolleson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.